Christopher R. Kaup, Esq. (SBN 014820)
David M. Barlow (SBN 035812)

**TB** **TIFFANY & BOSCO**
P.A.

1850 North Central Avenue
Twenty Fourth Floor
PHOENIX, ARIZONA 85004
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
E-Mail: crk@tblaw.com, dmb@tblaw.com
*Attorneys for Dartmouth Collections, LLC*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>**JIAN PENG**,<br><br>Debtor. | Involuntary Chapter 7<br><br>Case No. 2:25-bk-11985-EPB<br><br>**MOTION TO AMEND PETITION TO REMOVE PETITIONING CREDITOR YU KUANG** |

Petitioning creditor Dartmouth Collections, LLC ("Dartmouth") hereby files this Motion to Amend Petition to Remove Petitioning Creditor Yu Kuang ("Kuang") from the Involuntary Petition filed on December 11, 2025 ("Petition") based on Kuang's request to do so. The Motion to Amend Petition to Remove Petitioning Creditor Yu Kuang ("Motion") is brought pursuant to 11 U.S.C. § 303, Fed. R. Bankr. P. 1018, Fed. R. Bankr. P. 7015 and applicable case law and is supported by the following Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.      Factual Background

Kuang is among the numerous individuals who have claimed or purported to be victims of an investment fraud due to, in part, Debtor Jian Peng's ("Debtor") conduct.

Since 2020, various legal proceedings have ensued as a result of said fraud, in which individuals sought relief and sought to recoup their investments. Kuang is a party in several proceedings derived from Debtor's investment fraud.

Gabriel Vadasz ("Vadasz") was contacted by Dartmouth in order to assist in locating other prospective creditors of Debtor. On November 20, 2025, after a phone call in which Kuang expressed interest in signing the Petition as an involuntary creditor for Debtor, Vadasz sent an email to Kuang. **Exhibit A**, November Email Thread With Kuang. Dartmouth's counsel sent a follow-up email and stated, "[p]lease confirm you (sic) agreement to sign the involuntary petition regarding [Debtor]. Also, please provide us with your address and phone number and the dollar amount of your investment." *Id*. On November 21, 2025, Kuang responded, "Yes, Chris, I am willing to participate in this procedure - $20K to Medical Supply $20.01K to Maywind Best, Yu[.]" *Id*.

On December 5, 2025, Vadasz sent an email to Kuang and discussed the need for a wet signature, the time constraints of physical mailing and the possibility of authorizing Vadasz to sign the Petition on Kuang's behalf. **Exhibit B**, December Email Thread with Kuang. On December 7, 2025, Vadasz sent an email informing Kuang that the Petition had been updated to replace one creditor with another and attached the updated Petition. *Id*. Vadasz also informed Kuang that a wet signature was needed, Dartmouth's intent to file the Petition by December 10, 2025, and asking whether Kuang would be able to provide his wet signature by December 10, 2025. *Id*. On that same day, Kuang responded, "I am currently traveling outside the US for vacation. Please advise if I could sign it in pdf and return with email." *Id*. On December 8, 2025, Vadasz responded, "It has to be a wet signature so if you could print, sign and scan back that works. Otherwise, you

can also authorize me to sign on your behalf if you approve the form above." *Id*. Kuang responded, "Yes, you may please sign it on my behalf. Thanks! Y[.]"

On December 11, 2025, Dartmouth filed the Petition and included Kuang as a petitioning creditor with a claim for $20,100 based on "[m]oney sent to Maywind Trading, LLC (owned solely by Mr. Peng)[.]" (Doc. 1 at page 2 of 9). The Petition also included Kuang's address and contact information, as previously agreed to by Kuang. *Id*. at page 4 of 9). On March 5, 2026, Debtor served his responses to Dartmouth's First Set of Interrogatories, Requests for Production, and Requests to Admit and admitted that Debtor does not have twelve (12) or more creditors. **Exhibit C**, Jian Peng's Responses to Dartmouth's First Set of Interrogatories, Requests for Production, and Requests to Admit.

On or about April 6, 2026, Vadasz and Kuang had a phone call. Following that phone call, on April 6, 2026, Vadasz sent Kuang an email and summarized the phone call. **Exhibit D**, April Email Thread with Kuang. Specifically, Vadasz wrote, "[j]ust to recap what we discussed, the petition was signed on your behalf on December 7, 2025, as you authorized via email. This was done because you mentioned that you were a creditor of Maywind Trading, a company owned by [Debtor]. You further stated that [Debtor] was a bad actor and made several material and fraudulent misrepresentations to you, leading you to transfer funds to Maywind. If any of this is inaccurate, please let me know." *Id*. Vadasz also wrote, "The emails simply asked whether you were a creditor of [Debtor] and what basis you had for asserting that. Once confirmed, you authorized me to sign the petition on your behalf." *Id*. Vadasz also clarified that, "Dartmouth is covering any and all fees associated with the involuntary petition. This would include any fees that may be ordered if this petition is dismissed. This is contingent on your representations

being accurate and you providing evidence to corroborate your claims on a good-faith basis, to the extent you are able to." *Id*. After additional emails were exchanged, on April 6, 2026, Kuang wrote, "I did not review or approve the final filed petition, nor did I have a full understanding of the nature, legal implications, and potential risk associated with being named as a petitioning creditor in an involuntary bankruptcy proceeding. Accordingly, please proceed with removing my name from the petition at the earliest opportunity, whether through amendment or any other appropriate mechanism." *Id*. Vadasz immediately responded and wrote, "I am not sure what changed between our call an hour ago and now, but I will forward the information to Dartmouth and their counsel to file an updated petition removing your name." *Id*.

On April 12, 2026, Kuang responded, "To ensure that there is no misunderstanding, I would appreciate written confirmation on the following points: 1. That I will be formally removed as a petitioning creditor through an amended or updated filing with the Court; 2. That no further filings, submissions, or representations will be made on my behalf in this matter; 3. That any prior authorization, if any was purportedly provided, is revoked effective immediately; 4. That I will receive a copy of the amended or updated petition once it has been filed. Could you also please confirm the expected timeline for filing the updated petition? Thank you again for your assistance in resolving this promptly." *Id*.

On April 6, 2026, Debtor filed Notice of Receipt of Communication from Petitioning Creditor Yu Kuang ("Debtor's Notice"). (Doc. 39). Attached to Debtor's Notice is an email sent by Kuang to Debtor's counsel on April 6, 2026, wherein Kuang erroneously states, "I was also not informed that a bankruptcy petition would be filed, nor

did I receive any copies of the petition or related filings at or prior to the initiation of the case. Accordingly, I was unaware that my name had been included in this proceeding in that capacity." *Id*. at page 4 of 5.

Kuang is also an alleged claimant in a current interpleader action in Maricopa County Superior Court CV2024-008429 ("Interpleader Action"). The Interpleader Action involves funds transferred to the interpleader, G-Service, LLC, from three entities, one of which is Maywind Trading LLC. Dartmouth filed a claim and a Motion to Adopt Special Master's Second Report Dated February 6, 2026, and Response to Supplement to Special Master's Second Report and Recommendation Re Two-Track Claim Processing. On April 8, 2026, Kuang filed a Joint Response in Opposition to Dartmouth's Motion to Adopt Special Master's Second Report ("Kuang's Interpleader Response"). **Exhibit E**, Joint Response in Opposition to Dartmouth's Motion to Adopt Special Master's Second Report. Kuang's Interpleader Response discusses Dartmouth's claim against the Debtor at length and goes as far as attaching a Declaration of Jian Peng. *Id*. at page 25. Kuang's Interpleader Response also discusses Debtor's Motion to Vacate filed in the New Mexico Case. *Id*. at pages 5 – 6. Although Dartmouth is not aware of any information, at this time, that Kuang and Debtor have reached an agreement, it is clear that Kuang and Debtor have been communicating and working in tandem in the Interpleader Action after Kuang authorized his inclusion as a petitioning creditor. It is also reasonable to draw the inference that Kuang and Debtor discussed this involuntary bankruptcy. Kuang's request to be removed from the Involuntary Petition was the *quid pro quo*.

## II. Law

Section 303(b)(1) – (2) permits the filing of an involuntary petition and imposes statutory thresholds on the aggregate amount of claims and requisite number of creditors. 11 U.S.C. § 303(b)(1) – (2). Specifically, § 303(b)(1) requires three or more entities to file an involuntary petition and § 303(b)(2) allows a single creditor to file an involuntary petition if there are fewer than 12 creditors.

In *In re Vortex Fishing Systems, Inc.*, the Ninth Circuit affirmed the Bankruptcy Court's exercise of its discretion in allowing a petitioning creditor to withdraw as an involuntary petitioner where the withdrawal would not have implicated the requisite number of creditors under § 303(b). *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1065 – 66 (9th Cir. 2002). Specifically, the Ninth Circuit quoted the petitioning creditor's request to withdraw and discussed the Bankruptcy Appellate Panel's analysis of that request. *Id*. at 1065. The Bankruptcy Court granted the request, the BAP and Ninth Circuit affirmed. *Id*.

In reaching its decision, the Ninth Circuit adopted the BAP's reasoning and discussion on the policy implications surrounding the determination of whether a court should exercise its discretion and grant a petitioning creditor's request to be removed from the petition. *Id*. The Ninth Circuit referred to the policy that "[s]ubsequent payment by the bankrupt of some of these creditors could not deprive the court of jurisdiction." *Id*. (quoting *Reed v. Thornton*, 43 F.2d 813, 813 (9th Cir. 1930)). The Ninth Circuit went on to write, "As the BAP noted, this policy concern is not implicated 'when a creditor seeks to withdraw based on a misunderstanding or misrepresentation as to the purpose and effect of a joinder.'" *Id*. (quoting *In re Elsub Corp.*, 70 B.R. 797, 808 – 10 (Bankr. D.N.J.

1987) (discussing the policy concerns of its rule and application in other cases)). The Ninth Circuit distinguished cases where granting withdrawal would have defeated the requisite number of creditors imposed by § 303(b)(1) and held, "[h]ere, the number of creditors was still sufficient (had their claims been bona fide) even after the court granted [petitioning creditor's] withdrawal." *Id*.

Other courts have similarly addressed requests by petitioning creditors to withdraw and have focused on whether granting the petitioning creditors request would defeat the involuntary petition. *See In re Antar*, 2013 WL 1622217 at *6 (Bankr. S.D. Fla. 2013) (collecting cases and holding, "a subsequent withdrawal by one petitioning creditor does not render an involuntary petition insufficient for not having the requisite number of creditors."). In *In re Molen*, the court expressly stated, "the Court may not permit a petitioning creditor to withdraw if to do so would defeat the petition." *In re Molen*, 68 B.R. 840, 842 (Bankr. D. Mont. 1987). Similarly, in *In re Elsub Corporation* (cited to in *In re Vortex)*, the court held that "[c]ourts have held as a general rule that if a creditor is an eligible petitioning creditor, that creditor cannot withdraw if its withdrawal would result in the defeat of the involuntary petition." *In re Elsub Corporation*, 70 B.R. 797, 809, (Bankr. D.N.J. 1987).

Here, although Kuang expressly authorized his inclusion as a petitioning creditor in the Petition, his request to be removed will have no impact on these proceedings due to Debtor's admission that he has fewer than twelve creditors. Even though Dartmouth disputes Kuang's assertion that he "did not review or approve the final filed petition," it is undisputed that Kuang's involvement in this case as a petitioning creditor is unnecessary. Dartmouth further disputes Kuang's misstatements in his April 6, 2026,

email to Debtor's counsel. Dartmouth suspects that Kuang and Debtor reached a deal of the sort that other courts are justifiably concerned about, but in this case, Debtor's bankruptcy case will not be dismissed due to Kuang's withdrawal as a petitioning creditor. In short, this Court has the discretion to allow the Petition to be amended to remove Kuang where "the number of creditors [is] still sufficient[.]" *Id*.

Finally, Fed. R. Bankr. P. 1018 incorporates Fed. R. Bankr. P. 7015 in a proceeding that contests an involuntary petition. Fed. R. Bankr. P. 7015 incorporates Fed. R. Civ. P. 15 which permits a party to request leave to amend and states, "[t]he court should freely give leave when justice so requires." Here, despite Dartmouth's reasonable suspicions as to the motives for Kuang's change in position, permitting the Petition to be amended to remove Kuang does not impact any analysis under § 303(b) and Dartmouth does not object to Kuang's request.

## III. Conclusion

For the reasons set forth above, Dartmouth requests that this Court grant it leave to amend the Petition to remove Kuang as a petitioning creditor based on Kuang's request for Dartmouth to do so.

RESPECTFULLY SUBMITTED this 17th day of April, 2026.

**TIFFANY & BOSCO, P.A.**

By: /s/ Christopher R. Kaup, 014820

Christopher R. Kaup, Esq.
David Barlow, Esq.
1850 North Central Avenue
Twenty Fourth Floor
Phoenix, Arizona 85004
*Attorneys for Dartmouth Collections, LLC*

**FOREGOING** electronically filed with the Clerk of United States Bankruptcy Court this 17th day of April, 2026, with a copy served by the Court's electronic notification system this same day to the following:

Warren J. Stapleton
Osborn Maledon, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, AZ 85012-2793
*wstapleton@omlaw.com*

Yu Kang
4050 Pacific Harbours Dr., Unit 224
Las Vegas, NV 89121
*Yukuang111@gmx.com*

Xuefeng Han
22 North Road, Morningside
Johannesburg, South Africa
*Snow.han.xf@gmail.com*

Xuerui Wang
2039 Gulf of Mexico Dr., Unit 210
Longboat Key, FL 34228
*Sherrys7816@gmail.com*

/s/ *Bianca Ochoa*
Bianca Ochoa, Paralegal

EXHIBIT A

| | |
|---|---|
| **From:** | yukuang111@gmx.com |
| **To:** | Christopher R. Kaup |
| **Cc:** | DNGLV; Bianca Ochoa; David M. Barlow |
| **Subject:** | Re: RE: Involuntary Petition |
| **Date:** | Friday, November 21, 2025 9:56:47 AM |

Yes, Chris,

I am willing to participate in this procedure -

$20K to Medical Supply
$20.01K to Maywind

Best,
Yu

> **Sent:** Friday, November 21, 2025 at 9:37 AM
> **From:** "Christopher R. Kaup" <CRK@tblaw.com>
> **To:** "DNGLV" <gabriel@dnglv.com>, "yukuang111@gmx.com" <yukuang111@gmx.com>, "Bianca Ochoa" <bochoa@tblaw.com>
> **Cc:** "David M. Barlow" <dmb@tblaw.com>, "Bianca Ochoa" <bochoa@tblaw.com>
> **Subject:** RE: Involuntary Petition
>
> Thanks, Gabriel.
>
> Yu Kuang: Please confirm you agreement to sign the involuntary petition regarding Peng. Also, please provide us with your address and phone number and the dollar amount of your investment. We look forward to assisting you with this matter.
>
> ---
>
> **From:** DNGLV <gabriel@dnglv.com>
> **Sent:** Thursday, November 20, 2025 7:16 PM
> **To:** yukuang111@gmx.com; Christopher R. Kaup <CRK@tblaw.com>; Bianca Ochoa <bochoa@tblaw.com>
> **Subject:** Involuntary Petition
>
> Hey Chris,
>
> I have included Yu Kuang in this thread. They have expressed an interest in signing the involuntary petition relating to Peng. From our discussions, it would appear as though both Zhang and Peng moved around the money sent between their respective LLC's (Maywind, Six Pines, and G-Service). From what I am told, one or more transfers totaling $40,001.00 were made to entities controlled and owned by Zhang and Peng, predicated on promises of high returns that were never delivered. Yu, please correct me if I'm wrong. From what I am told, the investments were never directed to the purposes promised.

Sincerely,

Gabriel Vadasz

DNGLV

[gabriel@dnglv.com](mailto:gabriel@dnglv.com)

THE INFORMATION SUPPLIED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED.  If you are not the intended recipient of this message, the sender does not intend delivery to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.

EXHIBIT B

Yes, you may please sign it on my behalf. Thanks! Y

Sent from my iPhone

On Dec 8, 2025, at 09:38, Gabriel Vadasz <gabriel@dnglv.com> wrote:

It has to be a wet signature so if you could print, sign and scan back that works. Otherwise, you can also authorize me to sign on your behalf if you approve of the form above.

On Sun, Dec 7, 2025 at 6:25 PM Martell Mitbbs <martell.mitbbs@gmail.com> wrote:
> Hello, there,
>
> I am currently traveling outside the US for vacation. Please advise if I could sign it in pdf and return with email. Thanks!
>
> Best,
> Yu
>
> On Sun, Dec 7, 2025 at 6:08 AM DNGLV <gabriel@dnglv.com> wrote:
>> Hello,
>>
>> The form has been updated to replace one creditor with another. Please find the modified form attached. We will need to obtain a wet signature for you on the signature line for Page 4. Please advise if you're able to remit the signature and return it by Wednesday of next week, when we intend to file it. If not, then we may have to discuss other options. Thanks.
>>
>>
>> Sincerely,
>>
>> Gabriel Vadasz
>>
>> DNGLV
>> gabriel@dnglv.com
>>
>>
>> THE INFORMATION SUPPLIED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED.  If you are not the intended recipient of this message, the sender does not intend delivery to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.
>>
>>
>>> On Dec 5, 2025, at 3:38 PM, DNGLV <gabriel@dnglv.com> wrote:
>>>
>>> Hello,

As you may be aware, we need a wet signature on the document below to file the petition. Given the time restraints with physical mailing, you may also authorize me to sign the document on your behalf. The authorization would let me place a wet-ink signature on your named portion on pages 4-5. If you like to proceed with this avenue instead, simply let me know by responding to this email, authorizing me to do so.

Sincerely,

Gabriel Vadasz

DNGLV
[gabriel@dnglv.com](mailto:gabriel@dnglv.com)

THE INFORMATION SUPPLIED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED. If you are not the intended recipient of this message, the sender does not intend delivery to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.
<58J2664-Jian Peng - Involuntary Petition.PDF>

EXHIBIT C

Warren J. Stapleton, 018646
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
20th Floor
Phoenix, Arizona  85012-2793
(602) 640-9000
E-mail:        wstapleton@omlaw.com
Counsel for Putative Debtor/Respondent



# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Involuntary Chapter 7 |
| Jian Peng, | Case No. 2:25-bk-11985-EPB |
| Debtor. | |
| Dartmouth Collections, LLC, Yu Kuang, Xuefeng Han, Xueri Wang, | **JIAN PENG'S RESPONSES TO DARTMOUTH'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS TO ADMIT** |
| Petitioners, | |
| v. | |
| Jian Peng, | |
| Respondent-Debtor | |

Pursuant to Fed. R. Bankr. P. 7033, 7034, and 7036, Jian Peng ("Peng" or the "Debtor") responds to Petitioner, Dartmouth Collections, LLC ("Dartmouth") first set of requests for admission, requests for production, and interrogatories.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

Debtor objects to each and every Request to the extent that as written, it could be interpreted as requesting the production of information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Debtor will not

produce any information that is protected by the attorney-client privilege, work-product doctrine, or any other privilege that might be implicated.

By responding to certain of the Requests subject to objection, Debtor does not waive their right to challenge the relevancy, materiality, and/or admissibility of the information provided, to assert the objections asserted, or to object to the use of such information with respect to any proceeding or trial in this action. The Debtor's responses are based upon information presently known or available to it. Debtor reserves his right to supplement the Responses in accordance with the Fed. R. Bankr. P., if necessary, depending on any additional information that may become available to Debtor in the future.

## RESPONSES TO FIRST REQUEST TO ADMIT

**REQUEST FOR ADMISSION NO. 1:** Admit that You do not have twelve (12) or more creditors.

Admit _X_ Deny ____.

## RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:** For any Request for Admission that was not unequivocally admitted, identify and describe any and all facts that support Your denial.

**RESPONSE:** None. Debtor admitted the request for admission.

**INTERROGATORY NO. 2:** Identify any and all persons that had a claim against You as of December 12, 2025.

**RESPONSE:** Gabriel Vadasz, DLG Trust, PLLC, Dartmouth Collections, LLC. Also, see answer to Interrogatory Number 3 below to the extent that this answer calls for claims of "non-litigation" creditors.

**INTERROGATORY NO. 3:** Identify the names and addresses of all of Your creditors and a brief statement of the nature and amount of each creditor's claim pursuant to Fed. R. Bank. P. 1003(b)(1) – (2).

**RESPONSE:**

1. Qualia Collection, SE, 1444 North McDowell Blvd, Petaluma, CA 94954. $1,218. This arises from a dispute over the last month apartment rent to Copper Palm Apartments located at 12810 N Cave Creek Road, Phoenix, Arizona. Debtor moved out of this apartment in February of 2022.

2. JP Morgan Chase Bank Auto Finance. Chase Auto 700 Kansas Lane LA4 - 4025 Monroe, LA 71203. This is for a car loan. Debtor owes approximately $1,500 (payments are usually $560/month). Debtor has already paid approximately 60 months.

3. Citi Bank. Credit Card. Citibank Customer Service P.O. Box 6500 Sioux Falls, SD 57117. Approximately $500 outstanding balance.

**INTERROGATORY NO. 4:** Identify all facts in support of your assertion that "[Debtor] is not eligible to file bankruptcy in Arizona."

**RESPONSE:** Debtor has lived in North Carolina since 2023. He has not lived in Arizona since April 2023. He has not traveled to Arizona since April 2023 (except to drive through it on his way out of the state). He has not had any business activity in Arizona since April 2023. Debtor is a member of defunct business that is domiciled in Arizona called Aeon Capital, LLC ("Aeon"), but Aeon has not done any business since August 2023.

**INTERROGATORY NO. 5:** Identify Your domicile or residence for the one hundred and eighty days immediately preceding December 12, 2025.

**RESPONSE:** This information is provided to the agreement that this disclosure is made "Attorneys Eyes Only" to Dartmouth's counsel. Dartmouth and the Debtor have agreed to reserve all rights on this issue pending further resolution by the Court.

Debtor has lived in North Carolina since 2023. Most of Debtor's mail goes to a post office box located at: 2761 NC Hwy 210 E, Unit G, #152, Hampstead, NC, 28443. For most of the six months prior to the petition (from 2023 forward) Debtor has been living with a friend at the following address: 189 Everett Yopp Drive, Sneads Ferry North Carolina, 28460. In February 2026, Debtor moved to 412 Ridgeway Drive, Sneads Ferry, North Carolina 28460.

**INTERROGATORY NO. 6:** Identify all entities in which You held an interest in the one hundred and eighty days immediately preceding December 12, 2025, including the state in which such entities were incorporated, the state in which such entities conduct their business and the state in which such entities' creditors are located.

**RESPONSE:** Maywind Trading, LLC ("Maywind"). Maywind was incorporated in Illinois in 2019, and registered as foreign entity to Arizona in 2020. Maywind operated in Arizona during 2020 to 2021. Maywind is currently inactive in Arizona. Maywind does not currently have any assets nor does it conduct any business. I am the sole member of Maywind.

Aeon Capital, LLC ("Aeon"). Aeon was incorporated in Arizona in 2020. Aeon operated in Ariona during 2020 and 2021. Aeon does not currently have any assets nor does it conduct any business. I am the sole member of Aeon.

Six Pines Investment, LLC ("Six Pines"). Six Pines was a Texas LLC incorporated in 2021. Its principal place of business was 3431 Duplin Creek Dr. Katy, TX, 77494. Upon information and belief, this business is not active and never did business in Arizona. I was one of the five passive holders identified in the operating agreement provided in response to Dartmouth's requests for production. My membership interest is 16.67%.

**INTERROGATORY NO. 7:** Identify all assets in which You held an interest in the one hundred and eighty days immediately preceding December 12, 2025, including the location of such assets.

**RESPONSE:** The Bank of America account ending in -5448. A 2021 Subaru Outback with VIN # 4S4BTGNDXM3143106. Debtor also has clothes, a computer, a phone, and a small number of home furnishings and goods worth not more than $5,000. *See* N.C.G.S. § 1C-1601. Debtor also has approximately $3,000 in cash. All of these assets are located in North Carolina at the residence specified above.

**INTERROGATORY NO. 8:** Identify every state in which You have had a bank account in the one hundred and eighty days immediately preceding December 12, 2025, including the name of the financial institution at which the bank account was held.

**RESPONSE:** North Carolina. Debtor has had two bank accounts, including the credit card account. One with Bank of America, and one with Citibank. The Citibank account was opened in Illinois in 2016 and the Bank of America account was opened in Arizona in 2021. Statements for these accounts are provided in response to Dartmouth's requests for production.

**RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:** Produce any and all documents, communications and materials You identified or relied upon in drafting Your responses to Interrogatories Nos. 1 – 8.

**RESPONSE:** See responsive documents produced in folders named for the interrogatory to which they respond: Folders 2, 3, 4-5 & 8, 6, and 7.

**REQUEST FOR PRODUCTION NO. 2:** Produce any and all documents, communications and materials You identified or relied upon in drafting Your responses to Request for Admission No. 1.

**RESPONSE:** See responsive documents produced in folders No. 2 and No. 3.

**REQUEST FOR PRODUCTION NO. 3:** Produce any and all communications You have had with creditors identified in Interrogatory No. 3.

**RESPONSE:** See responsive documents produced in folder number 3.

DATED this 5th day of March, 2026.

OSBORN MALEDON, P.A.

By      /s/ Warren J. Stapleton
Warren J. Stapleton
2929 North Central Avenue
20th Floor
Phoenix, Arizona 85012-2793

*Counsel for Jian Peng*

Original of the foregoing emailed
this 5th day of March 2026, to:

Christopher R. Kaup
David M. Barlow
Tiffany & Bosco, P.A.
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016
crk@tblaw.com
dmb@tblaw.com
*Counsel for Plaintiff*

/s/ Peggy Nieto

EXHIBIT D

Dear Gabriel,

Thank you for your prompt response and for forwarding this to Dartmouth and their counsel.

To ensure there is no misunderstanding, I would appreciate written confirmation on the following points:

1. That I will be formally removed as a petitioning creditor through an amended or updated filing with the Court;
2. That no further filings, submissions, or representations will be made on my behalf in this matter;
3. That any prior authorization, if any was purportedly provided, is revoked effective immediately;
4. That I will receive a copy of the amended or updated petition once it has been filed.

Could you also please confirm the expected timeline for filing the updated petition?

Thank you again for your assistance in resolving this promptly.

Sincerely,
Yu Kuang


**Sent:** Monday, April 06, 2026 at 11:11 PM
**From:** "DNGLV" <gabriel@dnglv.com>
**To:** yukuang111@gmx.com
**Cc:** "Martell Mitbbs" <martell.mitbbs@gmail.com>, "Christopher R. Kaup" <CRK@tblaw.com>, "Bianca Ochoa" <bochoa@tblaw.com>, "David M. Barlow" <dmb@tblaw.com>, "Victoria Thomas" <vthomas@tblaw.com>
**Subject:** Re: Follow Up

Yu,

I am not sure what changed between our call an hour ago and now, but I will forward the information to Dartmouth and their counsel to file an updated petition removing your name.



Sincerely,

Gabriel Vadasz

DNGLV
gabriel@dnglv.com


THE INFORMATION SUPPLIED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED. If you are not the intended recipient of this message, the sender does not intend delivery to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.


On Apr 6, 2026, at 8:04 PM, yukuang111@gmx.com wrote:


Hi Gabriel,

Thank you for your explanation.

Regardless of the interpretation of 11 U.S.C. § 303 or any cited case law, I want to make clear that I do not wish to remain included as a petitioning creditor in this matter.

I did not review or approve the final filed petition, nor did I have a full understanding of the nature, legal implications, and potential risks associated with being named as a petitioning creditor in an involuntary bankruptcy proceeding.

Accordingly, please proceed with removing my name from the petition at the earliest opportunity, whether through amendment or any other appropriate mechanism.

Please confirm once this has been completed.

For the avoidance of doubt, I reserve all rights with respect to how my name and information were used in this matter.

Sincerely,
Yu Kuang

**Sent:** Monday, April 06, 2026 at 10:57 PM
**From:** "DNGLV" <gabriel@dnglv.com>
**To:** yukuang111@gmx.com
**Cc:** "Martell Mitbbs" <martell.mitbbs@gmail.com>, "Christopher R. Kaup" <CRK@tblaw.com>, "Bianca Ochoa" <bochoa@tblaw.com>, "David M. Barlow" <dmb@tblaw.com>, "Victoria Thomas" <vthomas@tblaw.com>
**Subject:** Re: Follow Up

The limited authority outlined in the email authorized me to sign on your behalf.

Under, 11 USCS § 303. there is no explicit requirement that the petition must be signed personally by the petitioning creditor. Instead, the statute focuses on the substantive requirements for filing an involuntary petition, such as the number of creditors and the nature of their claims . 11 USCS § 303. Furthermore, case law supports the principle that an agent or attorney may sign a bankruptcy petition on behalf of a creditor. For instance, in , In re Herzikopf, 118 F. 101 (1902). the court held that neither the Bankruptcy Code nor the general orders require a petition to be signed or verified personally by the petitioners. Instead, an attorney or agent with knowledge of the facts may sign and verify the petition . In re Herzikopf, 118 F. 101 (1902). This aligns with the broader principle that an agent or attorney may act on behalf of a principal in legal proceedings.

If you believe anything has been misrepresented, let us know, and we can submit an amended petition to the court. Additionally, if anything in my email is inaccurate, please let me know immediately so we can correct the record as needed.

Sincerely,

Gabriel Vadasz

DNGLV
gabriel@dnglv.com

THE INFORMATION SUPPLIED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED. If you are not the intended recipient of this message, the sender does not intend delivery

to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.

On Apr 6, 2026, at 7:39 PM, yukuang111@gmx.com wrote:

Before I sort things out, I need to know who signed the form. Thanks!

**Sent:** Monday, April 06, 2026 at 10:28 PM
**From:** "DNGLV" <gabriel@dnglv.com>
**To:** yukuang111@gmx.com
**Cc:** "Martell Mitbbs" <martell.mitbbs@gmail.com>, "Christopher R. Kaup" <CRK@tblaw.com>, "Bianca Ochoa" <bochoa@tblaw.com>, "David M. Barlow" <dmb@tblaw.com>, "Victoria Thomas" <vthomas@tblaw.com>
**Subject:** Re: Follow Up

Attached is a copy of the involuntary petition signed on your behalf, along with the authorization you provided to sign it.

Are you able to confirm that the information in my earlier email is accurate?

Sincerely,

Gabriel Vadasz

DNGLV
gabriel@dnglv.com

THE INFORMATION SUPPLIED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED. If you are not the intended recipient of this message, the sender does not intend delivery to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.

On Apr 6, 2026, at 7:22���PM, yukuang111@gmx.com wrote:

Did you sign this form on my behalf if the opposite attorney ask for it?

**Sent:** Monday, April 06, 2026 at 9:56 PM
**From:** "Gabriel Vadasz" <gabriel@dnglv.com>
**To:** yukuang111@gmx.com
**Cc:** "Martell Mitbbs" <martell.mitbbs@gmail.com>, "Christopher R. Kaup"

<CRK@tblaw.com>, "Bianca Ochoa"
<bochoa@tblaw.com>, "David M. Barlow"
<dmb@tblaw.com>, "Victoria Thomas"
<vthomas@tblaw.com>
**Subject:** Re: Follow Up

The only form signed on your behalf was the original petition, which you authorized on December 7th. There���s nothing else signed, or anything else that we���d be authorized to sign without first discussing with you.

On Mon, Apr 6, 2026 at 6:54���PM <yukuang111@gmx.com> wrote:
Hi, Gabriel,

Quick question, who is signing the form on my behalf? On the form you sent on 12/5/2025, this is the fact in item 13:

Yu Kuang Money sent to Maywind Trading, LLC
(owned solely by Mr. Peng)
$20100

Thanks!

Best,
Yu

**Sent:** Monday, April 06, 2026 at 9:33 PM
**From:** "DNGLV" <gabriel@dnglv.com>
**To:** yukuang111@gmx.com, "Martell Mitbbs" <martell.mitbbs@gmail.com>
**Cc:** "Christopher R. Kaup" <CRK@tblaw.com>, "Bianca Ochoa" <bochoa@tblaw.com>, "David M. Barlow" <dmb@tblaw.com>, "Victoria Thomas" <vthomas@tblaw.com>
**Subject:** Follow Up

Yu,

Thank you for taking the time to jump on a call. As discussed, there are several moving pieces and legal proceedings, so I completely understand how keeping track of them all can be confusing.

Just to recap what we discussed, the petition was signed on your behalf on December 7th, 2025, as you authorized via email. This was done because you mentioned that you were a creditor of Maywind

Trading, a company owned by Jian Peng. You further stated that Peng was a bad actor and made several material and fraudulent misrepresentations to you, leading you to transfer funds to Maywind. If any of this is inaccurate, please let me know.

Our email exchanges between November and December of 2025 clearly enumerated the proceedings you were joining and that you were not being represented in this matter, unless you chose to hire counsel separately. There were no guarantees over outcomes. The emails simply asked whether you were a creditor of Peng and what basis you had for asserting that. Once confirmed, you authorized me to sign the petition on your behalf. I understand you had a newborn around that time and were traveling, so there were various external factors at play.

We also discussed how Dartmouth is covering any and all fees associated with the involuntary petition. This would include any fees that may be ordered if this petition is dismissed. This is contingent on your representations being accurate and you providing evidence to corroborate your claims on a good-faith basis, to the extent that you are able to.

We also discussed how you thought you were listed as a party in the New Mexico matter. You are not. That matter is solely between DLG Trust and Peng. The exchanges of briefs may have added to that confusion, but the New Mexico matter is only related to Dartmouth's claim, tied to DLG Trust's action in New Mexico. You are not a party there and have no involvement with that matter.

Sincerely,

Gabriel Vadasz

DNGLV
gabriel@dnglv.com

THE INFORMATION SUPPLIED IN THIS

MESSAGE MAY BE LEGALLY PRIVILEGED. If you are not the intended recipient of this message, the sender does not intend delivery to waive any privilege or right pertaining hereto. If you received this message in error, please immediately notify the sender by return e-mail, and delete the errant message.

EXHIBIT E

Clerk of the Superior Court
*** Electronically Filed ***
L. Sanchez, Deputy
4/8/2026 5:17:46 PM
Filing ID 21813088

Yu Kuang
4050 Pacific Harbors Dr, Unit 224
Las Vegas, NV 89121
yukuang111@gmx.com
702-850-0805

Pro Se Plaintiff,
with additional pro se Claimants listed in Exhibit A(collectively, "Participating Claimants")

**IN THE MARICOPA COUNTY SUPERIOR COURT**

**STATE OF ARIZONA**

| | |
|---|---|
| YU KUANG, an individual,<br><br>Plaintiff,<br><br>    vs.<br><br>G-SERVICE LLC,  et al.,<br><br>Defendants. | Case No.: CV2024-008429<br><br><br>JOINT RESPONSE IN OPPOSITION TO DARTMOUTH'S MOTION TO ADOPT SPECIAL MASTER'S SECOND REPORT<br><br>(Assigned to the Hon. Quintin Cushner)<br>(Special Master: M. Scott McCoy) |

Plaintiff Yu Kuang and the additional pro se claimants listed in Exhibit A (collectively, "Participating Claimants") respectfully submit this Response to Dartmouth Collections, LLC's ("Dartmouth") "Motion to Adopt Special Master's Second Report dated February 6, 2026 and Response to Supplement to Special Master's Second Report and Recommendation Re Two-Track Claim Processing" filed March 30, 2026 ("Dartmouth's Motion").

Participating Claimants rely on and preserve the arguments set forth in "Joint Objection to Supplement to Special Master's Second Report And Recommendation Re Two-Track Claim Processing And Corrected Ex. A" filed on March 27, 2026 ("Joint Objection") and submit this Response to provide new evidence and address Dartmouth's additional arguments.

1

<u>**ARGUMENTS**</u>

**I. Dartmouth Is Not Eligible to Recover from Interpleaded Fund**

**A. Dartmouth Has Not Proven That Santel Owed Jian Peng a Debt or Held His Property**

Dartmouth's claim depends on establishing that Santel either owed a debt to Jian Peng or held property belonging to him.

Multiple claimants have raised this issue and requested that Dartmouth identify evidence supporting this fundamental premise. Dartmouth, however, presents no evidence—and no developed analysis—demonstrating that Santel owed Jian Peng a bona fide debt or that the interpleaded funds constitute property of Santel subject to garnishment.

Because garnishment reaches only debts owed to the judgment debtor or property of the debtor held by the garnishee, Dartmouth must establish that Santel owed Jian Peng a debt or held his property. See A.R.S. §§ 12-1572, 12-1584.

Without such proof, Dartmouth cannot establish that any property subject to garnishment exists, and its claim fails as a matter of law.

**B. Newly Obtained Declaration from Jian Peng Confirms That Santel Owed No Debt and Held No Property**

The Participating Claimants have obtained new evidence in the form of a declaration from Jian Peng, executed under penalty of perjury, confirming that Santel LLC did not owe him any money and did not hold any property on his behalf. (See Exhibit B.)

In his declaration, Jian Peng states:

2

"I, Jian Peng, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts stated herein.

2. Santel LLC did not owe me or my entities any money at any time.

3. At no time did Santel LLC serve as my or my entities' agent, custodian, or intermediary for any funds.

4. I have not authorized Santel LLC to hold or control funds on my or my entities' behalf at any time.

5. I make this declaration voluntarily and based on my personal knowledge.

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct."

This sworn declaration from Jian Peng himself, executed under penalty of perjury, directly confirms that no debtor-creditor relationship existed between Santel and Jian Peng, and that Santel did not hold any property of Jian Peng.

Because garnishment reaches only property of the debtor, this evidence defeats Dartmouth's claim.

**C. Jian Peng's Counsel Confirms: "Santel Did Not Owe Him Any Money"**

On February 11, 2026, Special Master filed a "Notice to Court of Receiving Communication Regarding Dartmouth Judgment". The Notice attaches Jian Peng's counsel's clear statement:

3

"Mr. Jian Peng does not believe there would have been any basis for Santel to be garnished, as Santel did not owe him any money (hence the lack of a claim from Mr. Peng in the G-Service case)."

This statement by Jian Peng's counsel confirms that Santel held no property of the debtor subject to garnishment.

**D. Santel's Owner Confirmed That the Interpleaded Funds Did Not Belong to Him or Any other Defendant**

Santel's owner, Yun Jing, stated in the "Answer to Interpleader Complaint" filed on February 2, 2021 in CV2021-000495 ( "2021 Matter") that the funds identified in the complaint belonged to "various third parties not named in the complaint," and not to him or any other defendant in the 2021 Matter. He further stated that such funds should be returned to those third parties once identified. (See Exhibit C, at 2, ¶¶ 19–20)

This position is corroborated by the Special Master R. Albrecht's "Final Report And Recommendation" in the 2021 Matter, which confirmed that Santel was notified of the proceeding but did not assert any claim to the interpleaded funds. (See Exhibit D, at 2, ¶7)

Santel's decision not to assert any claim to those funds is consistent with its owner's express position and further confirms that the funds did not belong to Santel.

**E. Conclusion**

Dartmouth cannot establish that Santel owed a debt to Jian Peng or held any property belonging to him.

4

Dartmouth presents no evidence to support this essential element of its claim. In contrast, the record affirmatively shows the opposite. Jian Peng, through a sworn declaration executed under penalty of perjury, confirms that Santel did not owe him any money and did not hold any property on his behalf. This is further supported by his counsel's statement that Santel did not owe him any debt.

In addition, Santel's owner, Yun Jing, expressly stated in the 2021 Matter that the interpleaded funds belonged to third parties and not to him or any defendant. Santel's failure to assert any claim to those funds is consistent with that position and confirms that the funds did not belong to it.

Under Arizona law, garnishment reaches only debts owed to the judgment debtor or property of the debtor held by the garnishee. See A.R.S. §§ 12-1572, 12-1584. Where no debt exists and no property is held, there is nothing subject to garnishment.

Accordingly, Dartmouth's garnishment-based claim fails as a matter of law, and its request to recover from the interpleaded funds should be denied.

**II. The Underlying New Mexico Action Remains Actively Contested and Undermines Dartmouth's Claim**

Dartmouth's claim depends on a New Mexico judgment (Case No. D-202-CV-2023-08285) originally obtained by DLG Trust and later assigned to Dartmouth. That underlying action, however, is not final and remains actively contested.

As reflected in the Bankruptcy Court's order dated March 20, 2026, granting relief from the automatic stay, both Jian Peng and Dartmouth stipulated to permit continued litigation in the New Mexico action. The Court approved that stipulation and authorized the parties to proceed,

5

confirming that the underlying judgment remains subject to ongoing judicial review. (See Exhibit E.)

The New Mexico court docket further demonstrates that the case is actively proceeding, including filings related to a motion to vacate, continued briefing, hearings, and related activity. (See Exhibit F.) These proceedings show that the validity and enforceability of the judgment remain in dispute.

Although Dartmouth emphasizes the existence of its judgment and its status as a judgment creditor, it does not address the ongoing litigation affecting the underlying New Mexico action on which its claim depends. Notably, Dartmouth itself recently stipulated to permit continued litigation in that action.

As an assignee, Dartmouth acquires no greater rights than its assignor and takes the claim subject to all defenses and challenges. Its asserted entitlement is therefore contingent and unresolved.

Under these circumstances, it would be improper to distribute the interpleaded funds based on a claim that depends on a judgment subject to active litigation. In an interpleader action, the Court must determine entitlement to the res based on actual ownership and established rights, not on a claim that remains disputed.

Distributing funds to Dartmouth at this stage would create a substantial risk of awarding the res based on a judgment that may later be vacated or modified.

**III. Dartmouth's Theory Depends on an Incorrect Assumption About Ownership of the Funds**

6

Dartmouth argues that if Santel had not transferred funds to G-Service, those funds would have remained available to satisfy its garnishment judgment. That argument rests on an unsupported assumption—that the funds were property of Santel in the first place.

The record demonstrates otherwise. As set forth above, the funds at issue were not owned by Santel and were identified as belonging to third parties. Because garnishment reaches only property of the debtor, funds that are not the debtor's property cannot be used to satisfy a garnishment judgment.

Dartmouth's argument therefore fails at its premise. It assumes the existence of attachable property without establishing that such property ever existed.

The procedural history further underscores this point. In the same garnishment action (CV2024-023300), Dartmouth named multiple garnishees, including MSS. MSS appeared and defended, and Dartmouth did not obtain a judgment against MSS. By contrast, the judgment against Santel was entered by default.

This contrast highlights the limited significance of the default judgment. It reflects the absence of a response, not a determination—after adversarial testing—that Santel held property of the debtor.

Accordingly, Dartmouth's theory should be rejected because it depends on an unproven and contradicted assumption regarding ownership of the funds.

**IV. Dartmouth Takes Inconsistent Positions Regarding Jian Peng**

Dartmouth argues that Jian Peng is not a party to this action, lacks standing, and should not influence the Court's decision. At the same time, Dartmouth's claim to the interpleaded

7

funds depends entirely on Peng, as Dartmouth seeks recovery by asserting that Santel owed Peng a debt or held property belonging to him.

These positions are inconsistent. Dartmouth cannot rely on an alleged property interest of Peng to support its claim while simultaneously dismissing Peng's relevance when he denies the existence of that very interest.

Moreover, Peng's absence of any claim in this proceeding —despite notice and opportunity—further supports that he had no ownership interest in the interpleaded funds.

If the funds were truly his property, one would reasonably expect him to assert a claim to protect that interest, particularly given that Dartmouth seeks approximately $2.7 million from the fund. He has not done so.

Regardless of whether Peng has procedural standing to object formally, the substance of his position remains directly relevant. Dartmouth's claim rises or falls on whether Santel actually owed a debt to Peng or held his property. If no such relationship existed, there is no basis for Dartmouth's garnishment theory.

**V. Dartmouth's "Convoluted" Funds Argument Fails Because The 2021 Matter Already Traced This Res**

Dartmouth argues that the claims and subsequent proceedings became "convoluted" because various money-laundering methods made it difficult to pinpoint the exact locations of funds owned by claimants, including funds in this interpleader. That assertion does not assist Dartmouth here because the relevant tracing question for this res was already resolved in the 2021 Matter.

8

In the prior interpleader, the 2021 Matter, the Court-approved methodology identified the G-Service account by source, specifically deposits from Maywind, Santel and MSS, and distributions were made on that entity-by-entity basis. Claimants were required to produce bank records demonstrating wires from their own accounts to Santel, MSS or Maywind before those entities transferred funds to G-Service. Only after tracing was established were claimants permitted to claim in the fund. The prior framework therefore did not treat the remaining G-Service fund as an untraceable mass of generalized creditor assets.

Accordingly, Dartmouth cannot invoke generalized allegations of financial complexity to avoid the consequences of tracing that this Court has already recognized and applied. Whatever complexity may have existed in the broader factual background, the source and ownership framework for this res was already judicially addressed. The present dispute exists because Dartmouth seeks to disregard that established tracing and recast traced claimant funds as generally available assets for satisfaction of an unrelated default judgment.

**VI. Dartmouth Incorrectly Asserts That the Objections Lack Legal Authority**

Dartmouth's assertion that the objections rely on no legal authority is incorrect. In the Joint Objection filed on March 27, 2026, claimants cited applicable authority addressing the issues before the Court, including Arizona garnishment statutes, interpleader principles, and constructive-trust doctrine. (See Joint Objection filed March 27, 2026.)

**VII. Dartmouth's SEC-Based Argument Fails as a Matter of Law and Fact**

9

Dartmouth selectively cites SEC Fair Fund materials while omitting controlling facts regarding covered assets, applicable time periods, eligibility requirements, and transaction dates.

**A. No Overlap Between the SEC Fair Fund and This Case**

The SEC Fair Fund applies only to purchases of GTV common stock and G-Coins / G-Dollars during April to June 2020, as defined in the SEC administrative orders. (Exhibit G, at 1.)

By contrast, this case concerns loan remittances wired to Maywind, Santel, and MSS between September and October 2020, which were later transferred to G-Service and form the basis of the interpleaded funds.

These two matters involve different assets, different timeframes, and different legal theories. The SEC Fair Fund addresses securities and digital asset transactions occurring in Spring 2020, whereas this case involves unrelated wire transfers in Fall 2020.

Accordingly, there is no overlap in the res, and no factual basis to treat the interpleaded funds as duplicative of any SEC Fair Fund recovery.

**B. The "Duplicative Claims" Accusation Is Unsupported**

Dartmouth alleges that most claimants submitted duplicative claims to the SEC Fair. That allegation requires evidence of overlapping claimants, overlapping property, and overlapping recoveries.

Dartmouth provides **none**. It offers no bank records, no tracing analysis, no SEC distribution data, and no evidence of overlapping payments.

Absent such evidence, Dartmouth's assertion is unsupported both factually and legally and provides no basis to diminish claimants' rights or support Dartmouth's claim.

10

Accordingly, Dartmouth's SEC-based argument should be rejected.

## **<u>REQUEST FOR RELIEF</u>**

For all the foregoing reasons, Participating Claimants respectfully request that the Court:

1. Deny Dartmouth Collections, LLC's Motion to Adopt the Special Master's Second Report.

2. Deny Dartmouth's claim in its entirety and exclude it from any distribution of interpleaded funds.

3. In the alternative, if the Court determines that Dartmouth may be considered for any distribution, then:

   a. limit any recovery strictly to funds traceable to Santel;

   b. subordinate any recovery by Dartmouth to all verified claims of Santel and MSS claimants;

   c. require Dartmouth to produce competent admissible evidence establishing that:

      i. Santel owed a debt to the judgment debtor, Jian Peng, or held personal property belonging to him; and

      ii. the specific interpleaded funds Dartmouth seeks to recover are in fact property of Santel; and

   d. preclude Dartmouth from recovering any interest, fees, or costs from the interpleaded funds to the extent such relief is not granted to claimants.

4. Grant such other relief as the Court deems just and proper.

11

Respectfully submitted this 8th day of April 2026.

By: /s/ Yu Kuang
Yu Kuang
4050 Pacific Harbors Dr, Unit 224
Las Vegas, NV 89121
Email: yukuang111@gmx.com
Phone:702-850-0805

Pro Se Plaintiff,
with additional pro se Claimants listed in Exhibit A
(collectively, "Participating Claimants")

12

The foregoing document was electronically filed this 8th day of April 2026, with: State of Arizona E-Filing Portal at *https://efile.azcourts.gov/*

A copy of the foregoing e-mailed this 8th day of April 2026, to:

**HOLDEN WILLITS PLC**

Two North Central Avenue, Suite 1760

Phoenix, Arizona 85004

Telephone: (602) 508-6210

Facsimile: (602) 508-6211

**M. Scott McCoy** (State Bar No. 013603)

smccoy@holdenwillits.com

*Special Master*

**Amy W. Hoffman**

FROST LLP

3200 N. Central Avenue, Suite 1200

Phoenix, Arizona 85012

Phone: 480-466-7005

Email: amyh@frostllp.com

*Counsel for Defendant*

**Christopher R. Kaup, Esq.**

**David M. Barlow, Esq.**

1850 North Central Avenue, 24th Floor Phoenix, Arizona 85004

Emails: crk@tblaw.com

dmb@tblaw.com

Attorneys for Dartmouth Collections, LLC

**WENHUA CHEN**

No. 150 Zhonghe Middle Rd

Hangzhou City, Zhejiang Province 310009

CHINA

**CARRIE CHEN**

5 Rivers Dr

13

Great Neck, NY 11020

USA

**SHUO CHEN**

6735 W Coles Rd

Laveen, AZ 85339

USA

**PANPAN GUAN**

444 Alaska Ave, Ste BYU393

Torrance, CA 90503

USA

Phone: +1 256-286-0428

Email: upwietstra@proton.me

**QIUPING GUAN**

Haihui New Village, Room 201, Unit 1, Building 214

Danyang City, Jiangsu Province 212300

CHINA

Email: babbsflood@gmail.com

**GRANTING (GANTING) HUANG**

5 Rivers Dr

Great Neck, NY 11020

USA

**YONG HUANG**

Rua Professor Antonio Cruz 2 No. 86-4

Porto 4200001

PORTUGAL

**YANG HUI**

1-28-4-911 Tachibana, Sumida City

Tokyo 131-0043

JAPAN

Email: nalandra@gmail.com

**JIEWEN JIA**

2905-6461 Telford Ave

Burnaby, BC V5H 0B7

CANADA

Email: meiguohaoa@gmail.com


**YINGJUN JIN**

7181 Whit Bloom Ave

Las Vegas, NV 89117

USA


**LIU JINPENG**

11577 Weir Way

Jurupa Valley, CA 91752

USA

Phone: 323-577-9438

Email: naturelever@gmail.com


**ALICE LEUNG**

6840 Patrick Lane

Plano, TX 75024

USA


**JENNY LI**

3185 W Serene Ave

Las Vegas, NV 89139

USA


**EE THENG LIM**

10 W Bay State St

Alhambra, CA 91802-9998

USA

Phone: 626-328-0540

Email: etlaundromat@gmail.com


**QIAN LIU**

No. 1 Xikang Rd, Gulou District

15

Nanjing, Jiangsu Province 21002

CHINA

**BING LIU**

7825 SE Sporri Ln

Milwaukie, OR 97267

USA


**LIPING LIU**

3161 High Springs Crescent

Mississauga, Ontario L5B 4G4

CANADA

Email: Liping.Liu.188@gmail.com


**Mingben Liu**

40 Mayvern Crescent,

Richmond Hill, ON,

Canada   L4C5J4

greedymt@gmail.com


**WEIHONG MO**

Anatolis 20

Agia Paraskevi 15342

GREECE

Email: jiangoodskymoon77@gmail.com


**YUFENG SHEN**

200 Ursaline St

Tallahassee, FL 32317

USA

Email: chinaxwest@gmail.com


**XIAOJING TIAN**

7479 Brahman Ln

Chino, CA 91708

USA

**SANG TIAN**

731 Tewksbury Ct

Rochester Hills, MI 48307

USA


**XUERUI WANG**

2039 Gulf of Mexico Dr, Unit 210

Longboat Key, FL 34228

USA

Phone: 917-439-7057

Email: sherrys7816@gmail.com


**RUQIN WANG**

292 The Bridle Walk

Markham, Ontario L6C 0V7

CANADA


**GONGHUA WANG**

216 Westmont Dr

Alhambra, CA 91801

USA


**HONG WANG**

Hogepad 44

7462 VK Rijssen

NETHERLANDS


**SUIHUA WEI**

23 Outlook St

Waterford West QLD 4133

AUSTRALIA


**YE YUAN**

No. 98 Jiankang Rd

Nanjing, Jiangsu Province 210000

CHINA

Phone: +86-166-7640-1213

Email: yuanyestc@gmail.com

**CHANGRAN ZHAI**

1-2-19 Neuracho M

Miyoshi, Aichi 470-0217

JAPAN

**JIUSHENG ZHANG & GONGHUA WANG**

216 Westmont Dr

Alhambra, CA 91801

USA

Email: laobin428@gmail.com

Phone: 626-615-2548

**JIAN ZHANG**

60 Finchley Cir

Markham, Ontario L3R 8S3

CANADA

Email: woshi36988123@gmail.com

**YUN LIU**

Chonburi 20150

THAILAND

Email: topskybu@gmail.com

**HANCHEN ZHANG**

6830 NE Bothwell Way, Ste C466

Kenmore, WA 98028

USA

Email: hccasefile@gmail.com

**JIN ZHOU**

17147 Guarda Dr

Chino Hills, CA 91709

USA

18

**SHIDE CHENG**

Chino Hills, CA 91709

Phone: 909-516-8809

Email: shide_cheng@yahoo.com


**NING LISA HUO**

Email: lisahuoning@gmail.com


**Xiaorong Ye**

Veteranenstr. 11,

Stuttgart 70565, Germany

wirdgut807@gmail.com

By: /s/ Yu Kuang
    Yu Kuang
    4050 Pacific Harbors Dr, Unit 224
    Las Vegas, NV 89121
    Email: yukuang111@gmx.com
    Phone:702-850-0805

    Pro Se Plaintiff,
    with additional pro se Claimants listed in Exhibit A
    (collectively, "Participating Claimants")

19

# EXHIBIT A

## ADDITIONAL PRO SE CLAIMANTS JOINING THIS RESPONSE

Each of the following joins this response individually and appears pro se:

/s/ Yu Kuang
Yu Kuang
4050 Pacific Harbors Dr, Unit 224
Las Vegas, NV 89121
Email: yukuang111@gmx.com
Phone:702-850-0805

/s/ Mingben Liu

Mingben Liu
40 Mayvern Crescent,  Richmond Hill, ON, Canada   L4C5J4   '
greedymt@gmail.com
+1-416-275-7568

/s/ Liping Liu

Liping Liu

3161 High Springs Crescent, Mississauga, Ontario, Canada L5B 4G4

Email: Liping.Liu.188@gmail.com

Phone: +1-416-666-6879

/s/ Jenny Nie

Jenny Nie

17490 SW Arborcrest Way

Beaverton OR 97003

Email: jenny.nie08@gmail.com

Phone: 503-887-0492

/s/ Ho Chun Chan
Ho Chun Chan
FLAT316 3F Yung Yuen House, Chuk Yuen North, Wongtaisin,
Kowloon, Hong Kong
Email: onewaynoback2007@gmail.com
Phone: +852 67722051

/s/ Zhai Yisheng

Zhai Yisheng

Dormitory of Dajiang Primary School, Edu. Office Muji Town, Juchao District, Chaohu City, Anhui

Province, 238055 Peoples Republic of China

Email: zhaiyisheng19811127@gmail.com

Phone: +86-15205653210


/s/ Changran Zhai

Changran Zhai

1-2-19 Neuracho Miyoshi Aichi 470-0217 Japan

Email: changranzhai5@gmail.com

Phone: +81-8057887992


/s/ Fang Liu
Fang Liu
70 Dallas Road, Lancaster, LA1 1TW
United Kingdom
Email: fang.liu0921@yahoo.com
Phone:+44-7561706695


/s/ Weihong Mo
Weihong Mo
Anatolis 20, Agia Paraskevi 15342, Greece
Email: goodskymoon77@gmail.com
Phone:+30 6981054588


/s/ Yufeng Shen
Yufeng Shen

200 Ursaline St.
Tallahassee, FL 32317
Email: chinaxwest@gmail.com
Phone: 720-238-4680

/s/ Zhenhong Zhou

Zhenhong Zhou
No. 765, Hongqiao Apartment,
Tianshan Road, Changning District, Shanghai, China
Email: yishanyishui007@protonmail.com
Phone:+1 406-285-8781

/s/ Jin Zhou

Jin Zhou

17147 Guarda Drive, Chino Hills, CA, 91709
Phone:+1-9096808833
Email:kimyayi@gmail.com

# EXHIBIT B

# DECLARATION OF JIAN PENG

I, Jian Peng, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts stated herein.

2. Santel LLC did not owe me or my entities any money at any time.

3. At no time did Santel LLC serve as my or my entities' agent, custodian, or intermediary for any funds.

4. I have not authorized Santel LLC to hold or control funds on my or my entities' behalf at any time.

5. I make this declaration voluntarily and based on my personal knowledge.

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

Executed on: _04 - 06 - 2026_

Jian Peng

# EXHIBIT C

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
2/2/2021 1:27:18 PM
Filing ID 12498841

**WILLIAMS|MESTAZ, LLP**
6225 NORTH 24TH STREET, SUITE 125
PHOENIX, ARIZONA 85016
TELEPHONE (602) 256-9400

Daniel B. Mestaz (024477)
dmestaz@williamsmestaz.com
Attorneys for Defendant Yun Jing

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Comerica Bank, a Texas Banking Association, | No. CV2021-000495 |
| Plaintiff/Interpleader, | **Answer to Interpleader Complaint** |
| vs. | (Assigned to the Honorable John Hannah) |
| G-Service, LLC, an Arizona limited liability company; Yun Jing, individually; Zin Zhang, individually; and Qisheng Chen, individually, | |
| Defendants. | |

Defendant Yun Jing hereby answers the interpleader complaint *en seriatim* as follows:

1.      Admit.

2.      Admit.

3.      Deny.

4.      Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 4, so they are denied.

5.      Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 5, so they are denied.

6.      Admit.

7.      Admit.

8.      Admit.

9. Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 9, so they are denied.

10. Admit that the Arizona Corporation Commission records appear to reflect the change in membership alleged, but deny the validity of the membership change.

11. Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 11, so they are denied.

12. Admit insofar as plaintiff told defendant what is alleged in paragraph 12, and on that basis defendant believes these allegations to be true, but defendant denies to the extent that the allegations imply any greater basis for defendant's admission.

13. Admit.

14. Admit.

15. Admit.

16. Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 16, so they are denied.

17. Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 17, so they are denied.

18. Defendant is without knowledge or information sufficient to form a belief as to the truthfulness of the allegations in paragraph 18, so they are denied.

19. Defendant affirmatively alleges that the funds identified in paragraph 15 of the complaint (the "Funds") belong to various third parties not named in the complaint (the "Third Parties"), and not to defendant or any of the other defendants.

20. Defendant affirmatively alleges that the plaintiff should return the Funds to the Third Parties, in the amounts and to the extent of their interest in the Funds, once their identities are confirmed and the Funds can be safely and securely returned.

WHEREFORE, Defendant Jing demands judgment as follows:

A. Returning the Funds to the Third Parties;

B. After the return of the Funds to the Third Parties, dismissing plaintiff's complaint as to defendant Jing;

C.     Awarding defendant Jing his costs and attorney's fees pursuant to A.R.S. §§ 12-341 and 12-341.01; and

D.     For such other relief the court deems appropriate.

Dated this 2nd day of February, 2021

_/s/ Daniel B. Mestaz_
Daniel B. Mestaz
*Williams|Mestaz, LLP*
Attorneys for Defendant Yun Jing

Original eFiled with the Clerk's ECF
filing system this 2nd day of February, 2021

Copy emailed via the clerk's ECF filing system
this same day to:

The Honorable John Hannah
Maricopa County Superior Court
101 W. Jefferson (ECB 811)
Phoenix, AZ 85003

Copy served via email/U.S. mail
this same day to:

Ronald M. Horwitz
Janessa E Koenig
Waddell Serafino Geary Rechner Jenevein, PC
4645 N. 32nd. St., Suite A-150
Phoenix, AZ 85018
rhorwitz@wslawpc.com
jkoenig@wslawpc.com
Attorneys for plaintiff

_/s/ Diana L. Clark_

3

# EXHIBIT D

Clerk of the Superior Court
*** Electronically Filed ***
M. Saldana, Deputy
5/5/2023 3:28:02 PM
Filing ID 15941958

Rebecca A. Albrecht (SBN 004164)
**BOWMAN AND BROOKE LLP**
Phoenix Plaza – Suite 1900
2929 North Central Avenue
Phoenix, Arizona 85012-2721
Telephone: (602) 643-2300
rebecca.albrecht@bowmanandbrooke.com
Minute Entries: mme@phx.bowmanandbrooke.com

Special Master

## SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association, | Case No. CV2021-000495 |
| Plaintiff/Interpleader, | |
| v. | **FINAL REPORT AND RECOMMENDATION** |
| G-SERVICE LLC, an Arizona limited liability company; YUN JING, individually; XIN ZHANG, individually; and QISHENG CHEN, individually, | (Honorable Timothy Thomason) |
| Defendants. | (Special Master: Rebecca A. Albrecht) |

**AND RELATED CROSSCLAIMS**
_____

G-SERVICE, LLC, an Arizona limited liability company,

Crossclaim Plaintiff,

v.

Yun Jing, individually,

Crossclaim Defendant.

And

MOUNTAINS OF SPICES, LLC, a New York Limited Liability Company,

Intervenor-Defendant.

Pursuant to the Court's order of appointment issued on December 27, 2021, the Special Master submits her Final Report and Recommendation related to the distribution of the funds interpled.

1. The funds interpled by Comerica Bank were funds from an account owned by G-Service LLC. The funds in the account were transferred to G-Service by three companies, Maywind Trading LLC ($4,000,000.00 on October 6, 2020), Santel LLC ($2,000,000.00 on October 20, 2020) and Medical Supply System International LLC ($3,000,000.00 on October 16, 2020). (Exhibit 2).

2. At the Special Master's request, she was provided with names and email addresses of persons who might have an interest in the interpled funds. Each person or entity that responded to emails sent by the Special Master were asked to submit documentation supporting their claim.

3. It is worthy of note, that due to the nature of the loan program that these entities and persons were involved in, there are potentially hundreds of claimants. The Special Master determined is no reasonable way identify or to provide notice to these other potential claimants.

4. Because of the number of claimants who have submitted claims, and the cost to appear as a claimant in the interpleader matter, the claimants were permitted to respond to the Special Master without filing an appearance in the matter.

5. The individuals and entities claiming a right to a portion of the monies interpled assert an interest based on their loans to, Maywind, Santel, and/or Medical Supply. Each claimant asserts that their loan to one or more of the three entities has not been repaid.

6. G-Service has not filed a claim for funds except to seek funds to pay outstanding liabilities of G-Service. There is one outstanding Request for the Distribution of Funds to pay certain G-Service bills in the amount of $73,480.48.

7. Maywind, Santel and Medical Supply were notified of this proceeding but have filed no claims for any of the amounts held.

///

///

8. Based on the nature of those claims it was necessary to confirm that the claimants had contributed funds to one or more of the three entities, prior to the time the entity contributed funds to G-Service.

9. To validate the claims, the claimants were asked to provide documentation that showed the deposit and the amount deposited to a Maywind, Santel, and/or Medical Supply account. Some of the documentation was in Chinese and required the employment of an interpreter to translate the submissions. All claims submitted have been provided to the court, unredacted, and to claimants, requesting a copy, in redacted form.

10. No documentation has been provided which, shows Maywind, Santel, or Medical Supply tracked a deposit it received from any claimant thru to G-Service.

11. Some of the claimants made their loans to Maywind, Santel, or Medical Supply after Maywind, Santel, or Medical Supply made their deposits to G-Service.

12. For the claimants that can validate a loan to Maywind, Santel, or Medical Supply, made before the transfer to G-Service, the Special Master recommends the requests be honored as follows:

    a. A percentage of the claims that derive from Maywind loans be paid.

        i. The total of the claims recommended to be paid equals $4,559,868. These claims are in excess of the $4,000,000. 00 deposited to G-Service by Maywind.

        ii. The Special Master recommends that payments to these claimants be at 87.7218% of their claimed amounts. This represents the percentage that the $4,000,000 deposited is of the total Maywind claims recommended to be paid.

    b. The claims that derive from the Medical Supply and Santel deposits be paid in full. The total claims do not exceed the deposits made to G-Service by Medical Supply and Santel.

/ / /

/ / /

13. The Special Master recommends that the Request for the Distribution of Funds in the amount of $73,480.48 be paid from the funds remaining on deposit after the other claims are paid.

14. The Special Master recommends that the remaining balance be held to permit claimants who have not submitted substantiated claims the opportunity to submit further documentation and to allow for the consideration of claims not yet filed and other expenses associated with maintaining the funds, including the Special Master fees.

The attached spreadsheet (Exhibit 1) contains the Special Master's recommendations for each of the claims submitted.

The column captions represent:

A. **Name**: The name of each claimant.

E. **Substantiated amount**: The amount verified by the documentation submitted.

F. **Pay Recommendation**: Special Master recommendation regarding full or partial or no payment.

G. **Notes**: Brief explanation of the basis for the recommendation.

H. **Entity Receiving Funds**: The entity to which the claimant made its loan.

I. **Dates of Transfers**: The dates that the claimant made its transfer(s) to Maywind, Santel or Medical Supply.

L. **Maywind at 87.7218%:** 87.7210% of the substantiated claims with deposits to Maywind prior to Maywind transfer to G-Service.

M. **Maywind Full**: The full amount of substantiated and timely Claims based on Maywind loans.

N. **Santel**: Substantiated claims based on Santel loans.

O. **Medical Supply**: Substantiated Claims based on Medical Supply Loans.

P. **RECOMMENDATION:** Special Master's recommendation of amount to be paid.

**NOTE**: Columns B, C, D, I, and K were deleted during preparation of the final report.

/ / /

The **Pay** tab contains requests that are adequately supported by the submitted data in the amounts claimed, in full or in part. The Special Master recommends that that the amounts set out in Column P, Recommendation be paid.

The **Do Not Pay** tab represents claims for which:

1. No documentation has been submitted, or,

2. Insufficient documentation has been submitted, or,

3. Claims made by parties that made their loans after the date the three entities made their deposits to G-Service.

The Special Master recommends that the claims under the Do Not Pay tab not be paid.

The All-Claimants tab represents all persons and entities who were provided notice of this proceeding and the amounts, if any, submitted. Names of persons who responded and declined to participate are not included in this tab.

Copies of this report with the attachments has been e-mailed to all persons and entities who have filed with the Court, and or the Special Master, a claim for a portion of the funds.

By separate motion, the Special Master has submitted, for filing under seal, the email and other contact information for all persons and entities who have submitted a claim.

**Based on the foregoing the Special Master recommends**:

1. The claims be paid or denied as set forth in Exhibit 1.

2. The Request for the Distribution of Funds be granted.

3. The Special Master's final invoice be paid when submitted.

4. The funds remaining after the payment of all approved claims, be held pending further claims.

5. The Special Master be relieved of further responsibility in this matter.

Respectfully submitted this 5th day of May 2023.

By: /s/ Rebecca A. Albrecht
Rebecca A. Albrecht
Phoenix Plaza – Suite 1900
2929 North Central Avenue
Phoenix, AZ 85012-2721
Special Master

/ / /

The foregoing document was electronically filed this 5th day of May 2023, with:

https://turbocourt.com

**COPY** of the foregoing **e-mailed** this 5th day of May 2023, to:

Xin (Jonathan) Zhang
G-SERVICE LLC
14260 W. Newberry Road #366
Newberry, FL 32669-2765
xinzhang32@gmail.com
Defendant *in Propria Persona*

Qisheng (Bryan) Chen
3431 Duplin Creek Drive
Katy, TX 77494
bryanchenpr@gmail.com
Defendant *in Propria Persona*

Daniel B. Mestaz
MESTAZ LAW
5090 N. 40th Street, Suite 200
Phoenix, AZ 85018
daniel@mestazlaw.com
Attorney for Defendant Yun Jing

William J. Quinlan
Eric Schmitt (*Pro Hac Vice*)
Celeste Juliana Ewart Herr
THE QUINLAN LAW FIRM, LLC
2415 E. Camelback Road, Suite 700
Phoenix, AZ 85016
wjq@quinlanfirm.com
eschmitt@quinlanfirm.com
cherr@quinlanfirm.com
Paralegal: ngriesbach@quinlanfirm.com
Attorneys for Intervenor-Defendant Mountains of Spices LLC

By: /s/ Kelly Brubaker

# EXHIBIT 1

| | A | E | F | G | H | J | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Name | Substantiated amount | Pay Recommedantion | Notes | Entity Receiving Funds | Dates of transfers | Maywind 87.7218% | Maywind  Full | Santel | Medical Supply | RECOMMENDATION |
| 2 | **Feng**, Zhuo | $70,000.00 ($40k Kuiting Yuan; $30K Zhuo Feng) | see notes -  partial pay only | $40,000 (Kuiting Yuan acct) + $30,000 (($11,000.00 + $19,000.00 Feng Shuo acct) - total transfer **$11,000.00 - (from Feng Shuo account) - Maywind - DO NOT PAY transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** $9,000.00 - (from Feng Shuo acct) - Maywind possible OK TO PAY (see notes below) $40,000.00 (from Kuiting Yuan acct)  - Maywind - possible OK TO PAY (see notes below). Claimant's supplemental documents indicate that all funds from Zhuo Feng and Kuiting Yuan were transferred to Maywind. Kuiting Yuan also submitted identification. Only remaining issues are that only Zhuo Feng filed a claim to interpleaded funds. PAY TO ZHUO FENG PARTIES ASSERT THEY ARE MARRIED | Kuiting Yuasn - Maywind $40,000.00; Feng Shuo - Maywind $30,000.00 (two transfers of $11,000.00 + $19,000.00 to Maywind). | Maywind -  10/12/2020: $40K; 10/14/2020: $9K; 11/20/2020: $11K;  (after Maywind deposit to G-Service of $4mil - 10/6/2020) | 42,984.00 | 49,000.00 | | | **42,984.00** |
| 3 | **Mountains of Spices** | $4,000,000.00 | Ok to Pay | Qidong (David) Xia. Amended 4/25/22 documents not adequate - EX A: sub-exhibit 3 (edly a G-Service banks statement however identifying info is missing) appears to show a $4mil transaction involving Maywind (10/6/20). Also shows two transactions that appear to show transactions of $2mil + $1mil involving Medical Supply (10/16/20) and another transaction for $2mil involving Santel (10/20/20). EX B: MOS bank statements w/Chase, indicate three transactions totaling $3.5mil between 8/11 - 8/26/2022, but unclear if these are all transfers out (debits) to Maywind (8/13 entry says "From MOS LLC" the other two do not say "From"). B of A indicates on 8/11/20 $1mil was wired out to Maywind (transaction appears to be a debit). EX C: G-Service bank statement with Comerica appears to show a wire transfer of $4mil involving Maywind but does not indicate if incoming or outgoing. Lastly, MOS provided no documentation to establish that the $4mil apparently transferred from Maywind to G-Service belongs to MOS. | Maywind - $4,000,000.00 | Maywind - 8/11/2020: $1.4 million; 8/13/2020: $1 million; 8/26/2020: $1.1 million | 3,508,872.00 | 4,000,000.00 | | | **3,508,872.00** |
| 4 | **Duan**, Tao | $228,151.68 | see notes - partial pay only | $150,868.00 + $77,283.68 - total transfer **($77,283.68 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** $150,868.00 - Maywind - OK TO PAY | Maywind - $225,151.68 | Maywind - 9/16/2020: $150,868.00 and 11/19/2020: $77,283.68 (after Maywind deposit to G-Service of $4mil - 10/6/2020) | 132,344.00 | 150,868.00 | | | **132,763.84** |

| | A | E | F | G | H | J | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Name | Substantiated amount | Pay Recommedantion | Notes | Entity Receiving Funds | Dates of transfers | Maywind 87.7218% | Maywind  Full | Santel | Medical Supply | RECOMMENDATION |
| 5 | **Song**, Linuo | $250,000.00 | okay to pay | $130,000+$100,000+$20,000 Photographs of deposit slips and signed checks made payable to Maywind were submitted; however, no evidence that the checks were actually cashed by Maywind. Claimant additional documents indicate that there were three checks deposited into a Wells Fargo Account ending in 3454, including checks for $20K (cashier's check); $100K and $130K (both personal checks). Claimant's bank statement shows check 1007 - $100K but does not indicate if it was cashed or deposited, but it appears under withdrawals; personal check 1005 - $130K shows as deposited or cashed check and also under withdrawals. No documentation to show that the deposits were to Maywind's account other than a generic document indicating that an account ending in 3454 was owned by Maywind.This one may be OK to pay; however, copies of the cashed checks with the deposit information visible would be preferable. | Maywind - $20,000.00 + $100,000.00 + $130,000.00 | Maywind - 9/25/2020: $20K; 9/30/2020: $100K; 10/6/2020: $130K | 219,250.00 | 250,000.00 | | | **219,250.00** |
| 6 | **Fang**, Ruihong | $40,000.00 | OK to pay | $40,000.00 Claimant provided confirmation that transfer of funds as completed. Okay to pay claim | Maywind - $40,000.00 | Maywind - 9/8/2020 | 35,080.00 | 40,000 | | | **35,080.00** |
| 7 | **Gu**, Xinrong | $100,000.00 | see notes - partial pay only | $70,000 + $30,000 - total transfer<br>**($30,000.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)**<br>$70,000.00 - Maywind - OK TO PAY | Maywind - $100,000 | Maywind - 9/8/2020: $70K; and 10/8/2020:$30K | 61,405.00 | 70,000.00 | | | **61,405.00** |
| 8 | **Zhai**, Changran | $56,200.00 | see notes - partial pay | $20,000.00 + $6,200.00 + $30,000.00 - total transfer<br>**($6,200.00 - Medical Supply Systems Intl - DO NOT PAY - transfer after Medical Supply Systems Intl deposit to G-Service of $3mil - 10/16/2020)**<br>**($30,000.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)**<br>$20,000.00 - Maywind - OK TO PAY<br>Claimant Changran Zhai ID OK. Claimant submitted docs for three transfers Changran Zhai transferred $20,000.00 to Medical Supply System Intl. Jiakexin Bei (not a claimant/no ID), appears to have transferred $30,000.00 to Maywind. Dong Jiang (not a claimant/ID okay) transferred $6,200.00 to Medical Supply System Intl. Claimant Zhai did not respond to correspondence requesting additional documentation sent via email on 10/31/22 | Medical Supply Intl, LLC - $20,000.00 + $6.200.00; Maywind Trading, LLC - $30,000.00 | Medical Supply Intl, LLC - 9/15/2020: $20K; 11/24/2020:$6.2K; Maywind Trading, LLC - $30K on 11/18/2020 (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | | 20,000.00 | **20,000.00** |
| 9 | **Hu**, Wei | $100,020.00 | Ok to pay | $100,020.00 -  International. Claimant provided supplemental documentation from "Ever Pay" that indicate claimant wired/transferred $100,020.00 to Medical Supply System. The document has Claimaint's name, driver's license number, and signature on it and matching reference# WIT010187 with second document from "Nab Connect" titled "International payment report" that indicates the same amount was "paid" to Medical Supply System. | Medical Supply System Intl - $100,020.00 | Medical Supply System Intl - 10/13/2020: $100,020.00 | | | | 100,020.00 | **100,020.00** |
| 10 | **Liang**, Hui | $10,000.00 | Ok to pay | $10,000.00 Claimant submitted ID and banking documents indicate transfer to Medical Supply in the amount claimed. | Medical Supply System Intl - $10,0 | Medical Supply System Intl - 10/6/2020: $10K | | | | 10,000.00 | **10,000.00** |

| | A | E | F | G | H | J | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Name | Substantiated amount | Pay Recommedantion | Notes | Entity Receiving Funds | Dates of transfers | Maywind 87.7218% | Maywind  Full | Santel | Medical Supply | RECOMMENDATION |
| | **Chen**, Emin | $17,220.00 | okay to pay | $14,170+$3,050 Transfer documentation appears to show a debit from Claimant's account for $14,170.00 with information showing Medical Supply System Intl; however, there is no information in the docs that confirms the account is owned by the Claimant and that funds were received by Medical Supply. There is a second document indicating an "overseas transfer" with $3,050.00 outgoing; Claimant additional documentation submitted confirms origination account and recipient as Medical Supply System for $14,170.00. Claimant's supplemental docs confirm a transfer of $3,050.00 originated from Claimant's account; however, transfer confirmation does not indicate the entity the funds went to. | Medical Supply System Intl - $14,170.00 | Medical Supply System Intl - 9/14/2020: $17,220.00 | | | | 14,170.00 | **14,170.00** |
| | **Hsieh**, Shu Hui | $25,000.00 | Ok to Pay | $10,000 + $5,000 + $10,000 = $25000 *Translated documents appear to confim Claimant transferred the funds to Medical Supply International* | Medical Supply System Intl - $25,000 | Medical Supply System Intl - 9/18/2020: $10K; 9/21/2020: $5K; and 9/22/2020: $10K | | | | 25,000.00 | **25,000.00** |
| | **Feng**, Yufei | $23,521.00 | OK to pay | $9,521+$14,000 Claimant's transfer documentation appears in order. Claimant ID received, okay to pay claim | Medical Supply System Intl - $9,521 + $14,000 = $23,521 | Medical Supply System Intl - 9/22/2020 and 10/14/2020 | | | | 23,521.00 | **23,521.00** |
| | **Huo**, Jing | $25,030.00 | see notes - partial pay only | $25,030+$1,126 - total transferred; **$5,020.00 - Maywind - (DO NOT PAY - transfer after Maywind deposit to G-Service of $4 mil - 10/6/2020)** $8,010.00 + $12,000.00 - Medical Supply System Intl - OK TO PAY Copy of British Columbia Canada Driver's License appears altered in the address field. Claimant's supplemental documentation included documentation that included a "payment ID" number in the amounts claimed. The documents do not have a visible signature in the customer signature field. Additionally, the "From" field and "Debit Memo" show the name Huo Xiong. It is unverified if Huo Xiong is the same person as Jing Huo. |  Medical Supply System Intl - $8,010.00 + $12,000.00 | Medical Supply System Intl - 9/23/2020:$8,010.00; 10/5/2020: $12,000.00; Maywind - 11/19/2020: $5,020.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | | 8,010.00 | **8,010.00** |
| | **Kuo**, Chun-Hung | $6,028.00 | Ok to pay | $6,028.00 - Translated documents appear in order | Medical Supply System Intl - $6,028 | Medical Supply System Intl - 9/30/2020: $6,028.00 | | | | 6,028.00 | **6,028.00** |
| | **Chen**, Teli | $100,000.00 | Ok to Pay | ID OK, transfer documents indicate Claimant wrote a personal check for $100,000.00, and that it was deposited. | Medical Supply System Intl, LLC | Medical Supply System Intl, LLC -  9/12/2020: $100K | | | | 100,000.00 | **100,000.00** |
| | **Li**, Qun | $4,000.00 | Ok to Pay | Claimant documents appear in order | Medical Supply System Intl, LLC | Medical Supply System Intl, LLC - 5/10/2020: $4K | | | | 4,000.00 | **4,000.00** |
| | **Chen**, Yuduo | $120,000.00 | see notes - partial pay only  $120,000.00 | $304,900.00 - total transfers claimed       **($184,900.00 - Medical Supply Systems Intl - DO NOT PAY - receiving entity not confirmed)**       $120,000.00 - Medical Supply Systems Intl - OK TO PAY Claimant submitted documents only confirm transfer of $120,000.00 to Medical Supply System Intl, LLC | Medical Supply System Intl, LLC | Medical Supply System Intl, LLC - 9/15/2020: $120K    Other transfers to unknown entity: 9/14/2020: $80K; 9/15/2020: $10K; 10/5/2020: $50K; 10/5/2020: $44.7K; 10/5/2020: $200.00 | | | | 120,000.00 | **120,000.00** |

| | Name | Substantiated amount | Pay Recommendantion | Notes | Entity Receiving Funds | Dates of transfers | Maywind 87.7218% | Maywind Full | Santel | Medical Supply | RECOMMENDATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | A | E | F | G | H | J | L | M | N | O | P |
| 19 | **Hung**, Tseng Chi | $10,000.00 | Ok to pay | ID OK, Documents appear to confirm the transfer of $10K to Medical Supply System International | Medical Supply System Intl, LLC | Medical Supply System Intl, LLC - 9/23/2020: $10K | | | | 10,000.00 | 10,000.00 |
| 20 | **Chen**, Xiao Ling<br><br>**New Address:**<br>46/14 Grace Munro Crescent<br>Strathnairn , ACT 2615 Australia | $21,000.00 | OK to Pay | ID OK, Claimant supplemental documents confirm transfer and debit of the corresponding amount claimed of $21K ($31,455.96 AUD) OK to Pay | Medical Supply System Intl, LLC | Medical Supply System Intl, LLC - 9/28/2020: $21K | | | | 21,000.00 | 21,000.00 |
| 21 | **Yang**, Hongli | $10,000.00 | Ok to Pay | $10,000.00 - *Translated documents appear to confirm Claimant's transfer* | Medical Supply Intl - $10,000.00 | Medical Supply Systems Intl - 09/23/2020: $10K | | | | 10,000.00 | 10,000.00 |
| 22 | **Tao**, Te | $100,020.00 | Ok to Pay | $100,020.00 - transfer docs translated and appear to confirm transfer to Medical Supply Intl | Medical Supply Intl - $100,020.00 | Medical Supply Systems Intl - 9/11/2020: $100,020.00 | | | | 100,020.00 | 100,020.00 |
| 23 | **Schotte**, Selina | $60,000.00 | Ok to Pay | Three separate transfers - $20,000.00 + $30,000.00 + $10,000.00. Documents appear to confirm transfers of funds in the amounts claimed | Medical Supply Intl - $20,000.00 + $30,000.00; Maywind - $10,000.00 | Medical Supply Systems Intl - 9/14/2020: $20K; 10/5/2020: $30K; 10/15/2020: $10K | | | | 60,000.00 | 60,000.00 |
| 24 | **Su**, Ningzhen | $13,020.00 | see notes - partial pay only | $6,000+$7,020 - total transfer ($7,020.00 - **Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** $6,000.00 - Medical Supply Systems Intl - OK TO PAY Claimant additional documentation appears to confirm that the account the funds originated from was owned by Claimant. | Medical Supply Intl - $6,000.00; Maywind - $7,020.00 | Medical Supply Systems Intl - 9/17/2020: $6K; Maywind - 10/14/2020: $7,020.00 | | | | $6,000.00 | $6,000.00 |
| 25 | **Shang**, Yue | $19,081.60 | okay to pay | $9,540.80 +$9,540.80 can likely pay. Claimant Yue Shang - submitted documents indicating two transfers for the same amount, one from her account and the other from Tommy Quasdorf's account. Yue Shang claims Tommy Quasdorf is her husband and included what appears to be a Dutch marriage certificate. IDs okay for Yue Shang and Tommy Quasdorf | Medical Supply Intl - $9,540.80 (from: Yue Shang); Medical Supply Intl - $9,540.80 (from Tommy Quasdorf) | Medical Supply Systems Intl - 9/24/2020: $9,540.80; 9/24/2020: $9,540.80 | | | | 19,081.00 | 19,081.00 |
| 26 | **Tang**, Xuejiao | $4,900.00 | see notes - partial pay only | $3,100.00 + $1,800.00 - total transfer **($1,800.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** $3,100.00 - Medical Supply Systems Intl - OK TO PAY Claim docs appear in order. | Medical Supply Intl - $3,100.00; Maywind - $1,800.00 | Medical Supply Systems Intl - 9/28/2020: $3.1K; Maywind - 10/12/2020: $1.8K (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | | $3,100.00 | $3,100.00 |
| 27 | **Schlueter**, Chelsea | $15,000.00 | Ok to Pay | Claimant documents appear in order | Medical Supply System Intl, LLC | Medical Supply Systems Intl, LLC - 9/17/2020: $15K | | | | 15,000.00 | 15,000.00 |

| Name | Substantiated amount | Pay Recommedantion | Notes | Entity Receiving Funds | Dates of transfers | Maywind 87.7218% | Maywind  Full | Santel | Medical Supply | RECOMMENDATION |
|---|---|---|---|---|---|---|---|---|---|---|
| **Li**, Liting | $50,000.00 | see notes -  ok to pay | Claimant submitted a passport and CA DL, with a matching name and DOB, but the photos differ enough that it's unclear if it is the same person in each (photos are 10 years apart, which could explain the difference). Additionally, the signatures on the two ID's and the transfer authorizations all differ. Otherwise, the transfers in the amounts claimed appear to have been made to the two entities. | Medical Supply System Intl, LLC $20,000.00 + $30,000.00 | Medical Supply Systems Intl, LLC - 9/9/2020: $20K; 9/21/2020: $30K | | | | 50,000.00 | **50,000.00** |
| **Wu**, Gui Rong | $48,500.00 | see notes - partial pay only | **Maywind - $4,400.00 + $1,200.00 (DO NOT PAY - funds were transferred after Maywind deposit to G-Service of $4mil on 10/6/2020)**<br>Santel LLC - $42,900.00 - OK TO PAY               Translated documents appear to confirm the transfer of the funds | Santel LLC - $42,900.00; Maywind - $4,400.00 + $1,200.00 | Santel - 10/7/2020: $42,900.00 (Ok); Maywind - 10/15/2020: $4,400.00; Maywind - 11/16/2020: $1,200.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | 42,900.00 | | **42,900.00** |
| **Leng**, Yang | $10,000.00 | see notes - partial pay only | $5,000.00 Santel + $5,000.00 Maywind - total transfer **($5,000.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)**<br>$5,000.00 - Santel - OK TO PAY              ID OK, Claimant transfer documents indicate two transfers - 1) Santel - $5,000.00 and 2) Maywind - $5,000.00. Screenshots of transactions do not include any institutional information and the "Merchant" field has both Claimant's name and the entity listed. | Santel, LLC - $5,000.00; Maywind Trading, LLC - $5,000.00 | Santel - 10/7/2020: $5K; and Maywind - 11/23/2020: $5K (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | 5,000.00 | | **5,000.00** |
| Chen, Liping | $230,030.00 | see notes - partial pay only | $100,010.00  + $100,010.00 + $30,010.00 - total transfer **($100,010.00 + $30,010.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)**<br>$100,010.00 - Santel - OK TO PAY | Maywind - $130,020.00; Santel - $100,010 | Santel - 9/14/2020 Maywind 11/17/2020 (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | 100,000.00 | | **100,000.00** |
| **Li**, Wei | $13,012.00 | Ok to pay | $13,012.00 claimed - Claimant supplemental documents indicate Claimant made a wire transfer to Santel LLC in the amount claimed | Santel - $13,012.00 | Santel - 9/17/2020: $13,012.00 | | | 13,012.00 | | **13,012.00** |
| **Deng**, LeJian (Deng, H) | $36,764.21 | see notes -  partial pay only | $17,188.05 + $19,576.18 - total transfer **($19,576.18 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)**<br>$17,188.05 - Santel - possible OK TO PAY (see notes below) Funds transferred from an account owned by Mw H Deng (not LeJian Deng) Documentation indicates one transfer to Santell for $17,188.05 and another transfer to Maywind for $ 19,576.18 (total transfer amount of $36,764.21).  Haiying Deng appears to be the source of the funds, not the Claimant - LeJian Deng. Haiying Deng did not make a claim to interpleader funds. New documents received - notarized document authorizing payment of funds to bank account of Leijian Deng | Santel - $17,188.05; Maywind - $19,576.18 | Santel - 9/22/2020 Maywind 11/20/2020 (after Maywind deposit to G-Service of $4mil - 10/6/2020) | | | 17,188.05 | | **17,188.05** |
| **Yang**, HongPeng | $2,990.00 | Ok to pay | A translated message confirming the transfer of funds indicates the transfer received was for $2,990.00, not $3K. Okay to pay the claim up to $2,990.00 | Santel LLC - $2,990.00 | Santel LLC - 9/15/2022: $3K | | | 2,900.00 | | **2,900.00** |

| | A | E | F | G | H | J | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Name** | **Substantiated amount** | **Pay Recommedantion** | **Notes** | **Entity Receiving Funds** | **Dates of transfers** | **Maywind 87.7218%** | **Maywind Full** | **Santel** | **Medical Supply** | **RECOMMENDATION** |
| | **Yang**, Haiyan | $10,000.00 | Ok to Pay | $10,000.00 - Claimant docs indicate a transfer was made in the alleged amount; however, there is no information identifying Claimant's banking institution that sent the funds except the url at the bottom indicates it may have been Sun Trust Bank | Santel LLC - $10,000.00 | Santel LLC - 9/22/2020:$10K | | | 10,000.00 | | **10,000.00** |
| | **G-Service, LLC (additional claim 02-13-2023)** | | Ok to Pay | Xin Zhang - claim includes $50,000.00 for salary for Xin Zhang (2/2023 - 5/2023); Employer Tax - $3,724.25; AZ Unemployment Tax - $186.77; Medical Insurance - $9,986. 88; 401K - $1,500; Paychex (payroll service) - $282.58; and Semple LLC (accounting services) - $7,800.00 (Total = $73,480.48). The only documents included was an agreement letter from Semple LLC stating that they could provide accounting services to G-Service and that they estimate that their fees would not exceed $6,000.00. That said, G-Services claims $7,800. in expenses to Semple for accounting services. | | | | | | | **73,480.48** |
| | | | | | | | 3,999,935.00 | 4,559,868 | | | **4,989,785.37** |

| | A | F | G | H | I | K |
|---|---|---|---|---|---|---|
| 1 | **Name** | **Substantiated amount** | **Recommedantion** | **Notes** | **Entity Receiving Funds** | **Dates of Transfers** |
| 2 | **Chen**, JingQing | $10,000.00 | See notes | **$10,000.00 - Maywind - (DO NOT PAY - transfer (after Maywind deposit to G-Service of $4mil - 10/6/2020)** Supplemental documentation indicates Claimant is the account holder | Maywind - $10,000.00 | Maywind - 11/17/2020 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 3 | **Huang**, Lihua | $10,000.00 | see notes | **$10,000.00 (DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claim form sent 3/16/22 and 5/6/22 Documentation appears in order | Maywind - $10,000.00 | Maywind - 10/13/2020 $10,000.00 |
| 4 | **Hsu**, Pei Wen | $22,100.00 | see notes | **($10,050.00 + $12,050.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4 mil - 10/6/2020)** Claimant documents indicated both transfers made to Maywind | Maywind - $22,100 (two transfers: $10,050.00 + $12,050.00) | Maywind - 10/14/2020: $10,050.00; and 11/23/2020: $12,050.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 5 | **Li**, Cuizhu | $170,000.00 | See notes | **($100,000.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4 mil - 10/6/2020); $70,000.00 - Medical Supply System Intl - (DO NOT PAY - transfer after Medical Supply deposit to G-Service of $3 mil)** Translated documents with submitted banking documents appear to confirm Claimant made transfers to Maywind and Medical Supply System Intl | Maywind - $100K; Medical Supply System Intl - $70K | Medical Supply System Intl - 10/21/2020: $70K (after Med Supply deposit to G-Service of $3 million on 10/16/2020); Maywind - 11/27/2020: $100K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |

|  | A | F | G | H | I | K |
|---|---|---|---|---|---|---|
|  | **Name** | **Substantiated amount** | **Recommedantion** | **Notes** | **Entity Receiving Funds** | **Dates of Transfers** |
|  | **Liang**, Tongbin | $110,050.00 | See notes | **($110,050.00 Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4 mil - 10/6/2020)** transfer appears to have been made in the amount claimed. Claimant identification okay. Additionally, it appears the transfer was initiated by a company - Vita Beauty & Cosmetics B.V. if transfer and receipt of funds by Maywind is confirmed, it appears Vita Beauty would be the proper claimant not Tongbin Liang as an individual. A letter from a Hua Sun (ID also included) claims that Tongbin is an authorized rep of Vita Beauty; however, this seems inadequate to establish Tongbin as a rightful claimant as an individual. | Maywind - $110,050.00 | Maywind - 11/23/2020: $110,050.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
|  | **Xue**, Guoping | $5,050.00 | See notes | **($5,050.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant ID is readable, but the copy is of poor quality. Also, need additional docs regarding funds transfer as it is unclear if Claimant is the owner of the account the funds originated from - doc only says "by order of" Claimant but parts of page are cut off. Claimant submitted additional documentation that clarifies the transfer was executed by Claimant for the amount claimed. | Maywind - $5,050.00 | Maywind - 10/15/2020: $5,050.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
|  | **Zonghui**, Li | $10,000.00 | Ok to Pay | **($10,000.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Translated messaging documentation appears to confirm Claimant made the transfer of funds. | Maywind - $10,000.00 | Maywind - 10/14/2020: $10K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |

| | Name | Substantiated amount | Recommedantion | Notes | Entity Receiving Funds | Dates of Transfers |
|---|---|---|---|---|---|---|
| | **A** | **F** | **G** | **H** | **I** | **K** |
| | **Garrard**, Kailin | $20,000.00 | Hold pending additional information | Receipt appears to indicate a deposit of $20,000, no transfer to any entity. Deposit receipt is for Wells Fargo bank account; however, there is no information to identify who owns the account. Claimant asserts she "e-deposited" funds into the Wells Fargo account for "G-Stock Investment" but no information re what entity this involved (Santel, Maywind, Medical Supply etc). As of 11/21/22, no response from Claimant to correspondence regarding request for additional documentation sent via email on 10/31/22 | Unknown | 9/29/2020 |
| | **Han**, Lijuan | $8,000.00 | hold pending confirmation of account holder information and transfer of funds | $3,000 + $5,000 transfer doc for $3,000.00 Supplemental documents received, still no confirmation that funds were sent to Maywind or some other entity | Maywind (unconfirmed) - $8,000 | Maywind - 10/20/2020: $5K; and 11/19/2020: $3K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |

| | Name | Substantiated amount | Recommedantion | Notes | Entity Receiving Funds | Dates of Transfers |
|---|---|---|---|---|---|---|
| | **A** | **F** | **G** | **H** | **I** | **K** |
| | Li, Yongbei | $11,500.00 | hold pending Claimant ID | $11,500.00 - Claimant did not provide identification. Translated documents appear to confirm transfer was made. Only item missing is Claimant identification. Claimant responded on 10/27/2022 requesting a refund to another bank account (unclear what was meant). Claimant did not include any additional information. | Medical Supply System | Medical Supply System Intl - 9/11/2020: $11.5K |
| | Liu, Shengsheng | $5,000.00 | hold pending further documentation to confirm ownership of source account | Claim form sent 3/16/22 and 5/6/22 $5,000.00 - Transfer documentation appears to confirm successful transfer to Maywind from the Wells Fargo account. No identifying information on transfer doc other than Claimant's first name appearing at the top of the screenprint. As of 11/21/22 Claimant has not responded to correspondence sent via email on 10/28/2022 | Maywind - $5,000.00 | Maywind - 10/14/2020:$5,000.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| | | | | | | |

| | Name | Substantiated amount | Recommedantion | Notes | Entity Receiving Funds | Dates of Transfers |
|---|---|---|---|---|---|---|
| | A | F | G | H | I | K |
| | Qin, Yuehua | $7,400.00 | hold pending further documentation | **$7,400.00 - Maywind - (DO NOT PAY - transfer (after Maywind deposit to G-Service of $4mil - 10/6/2020)** translation seems to indicate Claimant may have made the transfer. However, the submitted documents are still inadequate to confirm the origination of the funds. 12/17/2022, we received supplemental documentation. Translated documents indicate that "electronic receipt is for reference only, it is not to be used as proof of successful transfer." Also, supplemental documentation still does not identify the sender of the funds, only the recipient - Maywind. | Maywind - $7,400.00 | Maywind - 10/14/2020: $7,400.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| | Yanan, Sun | $20,000.00 | hold pending further documentation | email rec'vd 4/3/22; docs only show that transfers in the amounts claimed were made; however, no confirmation that Claimant owned the account the transfers originated from. Received additional bank statements that indicate outgoing transfers; however, the statements do not identify where the funds were sent. Also, there only appear to be outgoing transfers for $1K and $9K (none for $10K). | Medical Supply Intl - $1,000.00 + $9,000.00 + $10,000.00 | Unknown dates |
| | Wang, Tianchi | $30,000.00 | Hold pending additional documentation | $30,000.00 - Claimant advises the funds were transferred from an account owned by Li Ting Li (Claimant's purported Aunt) due to Claimant not being a U.S. Citizen. See notes under Li Ting Li (Group 2). The funds claimed by T. Wang were transferred from her account. No documentation has been submitted that confirms T. Wang sent funds to Li Ting Li. | Medical Supply Intl - $30 | Medical Supply Intl - 9/21/2020: $30K |

| | Name | Substantiated amount | Recommedantion | Notes | Entity Receiving Funds | Dates of Transfers |
|---|---|---|---|---|---|---|
| | **A** | **F** | **G** | **H** | **I** | **K** |
| 17 | **Yang**, Jingran | $120,000.00 | Hold pending additional documentation | $40,000+$60,000+$20,000+$3,600 Claimant documents indicate transfers made for a total of $120,000.00; however, the documents do not provide complete information to confirm that the transfer of funds was completed from Claimant to Maywind because of limited identifying information on the transfer documents. | Maywind - $40,000+$60 | Maywind - 9/8/2020: $40K; 10/14/2020: $60K; 11/24/2020: $20K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 18 | **Xiao**, Yuqing | | Hold - funds sent to BSI Group | $30,050.00 - Claimant docs indicate a transfer to BSI Group LLC, which is not one of the known entities in this matter. Discord chat screenshots, alleged correspondence with Mountain of Spices, and G-Club, need Chinese translation. | BSI Group LLC - $30,05 | BSI Group LLC - 3/17/2021: $30,050.00 |
| 19 | **An**, Jun | $10,000.00 | Do not pay | **($10,000.00 - DO NOT PAY - no confirmation of any funds transferred to Maywinde Medical Supply Intl, or Santel)** ID OK, translated documents indicate funds were transferred to a Mei Si Ranch. Claimant has not submitted documents that indicate any funds were transferred to Medical Supply System Intl, Maywind, or Santel. | Unknown | Unknown - 10/8/2020: $10K |
| 20 | **Cheuk**, Oi Kuen Linsie | | Do not pay | **($10,000.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant docs only contain screenshots of two messages.The messages indicate what appears to be two transfers of $5K each, with no other details. The information provided is insufficient. | Unknown | Unknown - possibly 8/9/2020: $10K |

|   | A | F | G | H | I | K |
|---|---|---|---|---|---|---|
| 1 | **Name** | **Substantiated amount** | **Recommedantion** | **Notes** | **Entity Receiving Funds** | **Dates of Transfers** |
| 21 | **Hu**, Jiazhen | $10,050.00 | Do not pay | **($10,050.00 - Maywind - DO NOT PAY - transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** | Maywind | Maywind - 11/25/2020: $10,050.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 22 | **Li**, Meng | $10,100.00 | Do not pay | **($10,100.00 - Maywind - DO NOT PAY transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant Meng Li submitted the claim for interplead funds; however, transfer documents show Dong Jiang as the sender. Claimant included Dong Jiang's ID with his submission, but Dong Jiang is not listed as a claimant. Claimant has not responded to correspondence requesting additional documentation sent via email on 10/28/2022 | Maywind Trading LLC | Maywind - 11/17/2020: $10,100.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 23 | **Miller**, Chen Shubei | $1,000.00 | Do not pay | **($1,000.00 - Maywind - DO NOT PAY transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant ID OK, transfer documents have a signed authorization to transfer $1,000.00 to Maywind, but there is no documentation confirming the transfer completed - doc says "$1,000.00 will be debited from account…" Claimant supplemental documents are not related to funds transferred to Maywind. Claimant's supplemental docs reference funds for a "Mei Xi Farm" and a "Himalaya Korea Farm Co. Ltd." Claimant did not submit documents to substantiate the actual transfer of funds to Maywind. | Maywind Trading LLC | Maywind - 10/14/2020: $1K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |

| | Name | Substantiated amount | Recommedantion | Notes | Entity Receiving Funds | Dates of Transfers |
|---|---|---|---|---|---|---|
| | | A | F | G | H | I | K |
| 24 | **Qin**, Bo | $14,500.00 | Do not pay | **($14,500.00 - Maywind - DO NOT PAY transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant documents appear in order | Maywind Trading LLC | Maywind - 11/17/2020: $14.5K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 25 | **Xishan,** Wang | $19,020.00 | Do not pay | **($19,020.00 - Maywind - DO NOT PAY transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant ID OK; transfer documents do not indicate institution used for the transfer or any information re recipient. Docs only say "Transfer Xishan Wang: Maywind Trading LLC," a transfer amount listed as -$19,020.00, and date of transfer 10/14/2020 | Maywind Trading LLC | Maywind - 10/14/2020: $19,020.00 (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 26 | **Yao,** Wei Feng | $10,000.00 | Do not pay | **($10,000.00 - Maywind - DO NOT PAY transfer after Maywind deposit to G-Service of $4mil - 10/6/2020)** Claimant documents appear in order. | Maywind Trading LLC | Maywind - 10/19/2020: $10K (after Maywind deposit to G-Service of $4mil - 10/6/2020) |
| 27 | **Zuo**, Sabrina | $3,000.00 | Hold pending additional documentation | Claimant ID OK, transfer docs only indicate a request to transfer $3,000.00, but signature page is not included, and no confirmation transfer was completed. Claimant did not respond to correspondence requesting additional documentation sent via email on 10/28/22 | Santell, LLC | Santel - 9/21/2020: $3K |
| 28 | **Total $USD** | $589,250.00 | | | | |

# Comerica v. G-Service
## All Claimants

| Name | Claim $USD (Estimate) |
|---|---|
| **Chen**, Emin | $17,220 |
| **Chen**, JingQing | $10,000 |
| **Chen**, Liping | $230,030 |
| **Deng**, H (See LeJian Deng) | N/A |
| **Deng**, LeJian | $43,080 |
| **Duan**, Tao | $228,151.68 |
| **Fang**, Ruihong | $40,000 |
| **Feng**, Yufei | $23,521 |
| **Feng**, Zhuo | $70,000 |
| **Garrard**, Kailin | $20,000 |
| **Gu**, Xinrong | $100,000 |
| **Han**, Lijuan | $8,000 |
| **Hsu**, Pei Wen | $22,100 |
| **Hu**, Wei | $100,020 |
| **Huang**, Lihua | $10,000 |
| **Hsieh**, Shu **Hui** | $25,000 |
| **Huo**, Jing | $25,030 |
| **Kuo**, Chun-Hung | $6,028 |
| **Li**, Cuizhu | $170,000 |
| **Li**, Wei | $13,012 |
| **Li**, Yongbei | $11,500 |
| **Liang**, Hui | $10,000 |
| **Liang**, Tongbin | $110,050 |
| **Liu**, Shengsheng | $5,000 |
| **Maywind Trading LLC** | N/A |
| **Medical Supply System** | N/A |
| **Mountains of Spices** | $4,000,000 |
| **Qin**, Yuehua | $7,400 |
| **Santel LLC** | N/A |
| **Schotte**, Selina | $60,000 |
| **Shang**, Yue | $19,081.60 |
| **Song**, Linuo | $250,000 |
| **Su**, Ningzhen | $13,020 |
| **Yanan, Sun** | $20,000 |
| **Tang**, Xuejiao | $4,900 |
| **Tao**, Te | $100,020 |
| **Wang**, Tianchi | $30,000 |
| **Wu**, Gui Rong | $48,500 |
| **Xiao**, Yuqing | $30,000 |
| **Xiao**, Yuqing | $30,050 |
| **Xue**, Guoping | $5,050 |
| **Yang**, Haiyan | $10,000 |
| **Yang**, Hongli | $10,000 |
| **Yang**, HongPeng | $3,000 |
| **Yang**, Jingran | $120,000 |
| **Zhang**, Xin (Jonathan) | $0.00 |
| **Zonghui**, Li | $10,000 |
| **An**, Jun | $10,000 |
| **Chen**, Teli | $100,000 |
| **Chen**, Xiao Ling | $21,000 |
| **Chen**, Yuduo | $304,900 |
| **Cheuk**, Oi Kuen Linsie | $10,000 |
| **Hu**, Jiazhen | $10,050 |
| **Hung**, Tseng Chi | $10,000 |

**Comerica v. G-Service**
**All Claimants**

| Name | Claim $USD (Estimate) |
|---|---:|
| **Leng**, Yang | $10,000 |
| **Li**, Liting | $50,000 |
| **Li**, Meng | $10,100 |
| **Li**, Qun | $4,000 |
| **Miller**, Chen Shubei | $1,000 |
| **Qin**, Bo | $14,500 |
| **Schlueter**, Chelsea | $15,000 |
| **Xishan,** Wang | $19,020 |
| **Yao**, Wei Feng | $10,000 |
| **Zhai**, Changran | $56,225 |
| **Zuo**, Sabrina | $3,000 |
| **Total $USD Claim** | **$6,727,559** |

# EXHIBIT 2

## *Small Business Checking* account details:

### Electronic deposits this statement period

| Date | Amount | Activity | Reference numbers Customer | Bank |
|---|---|---|---|---|
| Oct 06 | 4,000,000.00 | Wire # 019495 Org Maywind Tradin Fed # 017485 | | 9485003004 |
| Oct 14 | 7.52 | Upwork 2.48-7.5 Upwork.com/bi CA 2875 | | 0M30317964 |
| Oct 14 | 2.48 | Upwork 2.48-7.5 Upwork.com/bi CA 2875 | | 0M37280191 |
| Oct 16 | 2,000,000 00 | Wire # 023606 Org Medical Supply Fed # 016528 | | 9485003552 |
| Oct 16 | 1,000,000.00 | Wire # 025318 Org Medical Supply Fed # 020976 | | 9485003553 |
| Oct 20 | 2,000,000.00 | Wire # 019607 Org Santel Llc Fed # 008881 | | 9485003850 |
| Oct 26 | 0.32 | Npc Payroll 102620 12807744 | | 9488439855 |

Total Electronic Deposits: $9,000,010.32
Total Number of Electronic Deposits: 7

### Checks paid this statement period

* Symbol indicates a break in check number sequence

# Symbol indicates an original item not enclosed

@ Symbol indicates a break in check number sequence and an original item not enclosed

| Check Number | Amount | Date Paid | Bank Reference Number | Check Number | Amount | Date Paid | Bank Reference Number |
|---|---|---|---|---|---|---|---|
| #20008 | -1,827.99 | Oct 29 | | #20010 | -2,068 84 | Oct 29 | |
| #20009 | -2,048.07 | Oct 30 | | @20013 | -2,017.72 | Oct 29 | |

Total checks paid this statement period: -$7,962.62

Total number of checks paid this statement period: 4

### ATM/Debit Card transactions this statement period

| Date | Amount ($) | Activity | Bank reference number |
|---|---|---|---|
| Oct 13 | -955 68 | Zendesk, Inc. San Francisco CA 2875 | |
| Oct 14 | -2 48 | Upwork 2 48-7 5 Upwork.com/bi CA 2875 | |
| Oct 14 | -7.52 | Upwork 2 48-7.5 Upwork.com/bi CA 2875 | |
| Oct 14 | -162.90 | Msft * E0600ch0 8006427676 WA 2875 | |
| Oct 19 | -475 00 | Paypal *purecon 4029357733 Hkg 6790 | |
| Oct 19 | -588 55 | Zendesk, Inc. San Francisco CA 2875 | |
| Oct 19 | -14 25 | Foreign Fee 7/f Tung Yiu CO 4029357733 Hkg 6790 | |
| Oct 19 | -180 25 | Upwork -3342632 Upwork com/bi CA 2875 | |
| Oct 20 | -21.72 | Int'quickbooks 800-446-8848 CA 6790 | |
| Oct 23 | -109 50 | Peerspace, Inc 4154032421 CA 2875 | |
| Oct 26 | -74.41 | Zendesk, Inc. San Francisco CA 2875 | |
| Oct 26 | -416.88 | Zendesk, Inc San Francisco CA 2875 | |

Total ATM/Debit Card Withdrawals: -$3,009.14

Total Number of ATM/Debit Card Withdrawals: 12

### Electronic withdrawals this statement period

| Date | Amount ($) | Activity | Reference numbers Customer | Bank |
|---|---|---|---|---|
| Oct 22 | -10,000.00 | Wire # 023163 Bnf Fennemore Crai Fed # 000017 | | |
| Oct 26 | -0.32 | Npc Payroll 102620 12807744 | | |
| Oct 29 | -4,227.11 | Journey Employer Tax Impoun 102920 12807744 | | |

# EXHIBIT E



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re:

Case No.: 2:25–bk–11985–EPB

JIAN PENG
14747 N NORTHSIGHT BLVD STE 111
SCOTTSDALE, AZ 85260
SSAN: xxx–xx–0000
EIN:

Chapter: 7

Debtor(s)

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

You are hereby notified that on March 20, 2026, this Court entered the enclosed judgment or order on the docket for the above–entitled proceeding.

I hereby certify that on this date a copy of this notice and the judgment or order were sent to the Bankruptcy Noticing Center for mailing to the parties and the U.S. Trustee.

Date: March 20, 2026

Address of the Bankruptcy Clerk's Office:
U.S. Bankruptcy Court, Arizona
230 North First Avenue, Suite 101
Phoenix, AZ 85003–1727
Telephone number: (602) 682–4000
www.azb.uscourts.gov

Clerk of the Bankruptcy Court:

Khadijia V. White–Thomas



Eddward P. Ballinger Jr., Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re:

JIAN PENG,

Debtor.

Involuntary Chapter 7

Case No.: 2:25-bk-11985-EPB

**ORDER APPROVING STIPULATION TO MODIFY AUTOMATIC STAY RE: NEW MEXICO COURT CASE NO. D-202-CV-2023-08285**

This Court, having considered Debtor Jian Peng ("Debtor") and Creditor Dartmouth Collections, LLC *Stipulation to Modify Automatic Stay RE: New Mexico Court Case No. D-202-CV-2023-08285* ("Stipulation") (Doc. No. 21), and good cause appearing, the Court ORDERS the following:

**IT IS HEREBY ORDERED** approving the Stipulation;

**IT IS FURTHER ORDERED** that the automatic stay is lifted to permit the Debtor to prosecute his case to vacate the New Mexico judgment.

**IT IS FURTHER ORDERED** that the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(3) is waived and this Order takes effect immediately.

**--DATED AND SIGNED ABOVE--**

# EXHIBIT F

# New Mexico Courts
## Case Lookup

Name Search     Case Number Search     DWI Search

Case Detail

## DLG Trust PLLC v. Jian Peng

| CASE DETAIL | | | |
|---|---|---|---|
| **CASE NUMBER** | **CURRENT JUDGE** | **FILING DATE** | **COURT** |
| D-202-CV-202308285 | Barela-Shepherd, Denise | 10/23/2023 | ALBUQUERQUE DISTRICT |

| PARTIES TO THIS CASE | | | |
|---|---|---|---|
| **PARTY TYPE** | **PARTY DESCRIPTION** | **PARTY #** | **PARTY NAME** |
| D | Defendant | 1 | PENG JIAN |
| | | ATTORNEY: WALLER STEPHEN B. | |
| G | Garnishee | 1 | LAW OFFICE OF STEPHEN B. WALLER, LLC |
| P | Plaintiff | 1 | DLG TRUST PLLC |
| | | ATTORNEY: BLUFF GUY W. | |

| HEARINGS FOR THIS CASE | | | | | |
|---|---|---|---|---|---|
| **HEARING DATE** | **HEARING TIME** | **HEARING TYPE** | **HEARING JUDGE** | **COURT** | **COURT ROOM** |
| 01/12/2026 | 10:00 AM | Motion Hearing | Barela-Shepherd, Denise | ALBUQUERQUE DISTRICT COURT | Courtroom 520 |
| 09/10/2024 | 11:00 AM | Writ Hearing | Barela-Shepherd, Denise | ALBUQUERQUE DISTRICT COURT | Hearing Room 510 |
| 06/18/2024 | 2:00 PM | Motion Hearing | Barela-Shepherd, Denise | ALBUQUERQUE DISTRICT COURT | Hearing Room 515 |

| CIVIL COMPLAINT DETAIL | | | | |
|---|---|---|---|---|
| **COMPLAINT DATE** | **COMPLAINT SEQ #** | **COMPLAINT DESCRIPTION** | **DISPOSITION** | **DISPOSITION DATE** |
| 03/21/2026 | 1 | OPN: COMPLAINT | | |
| **COA SEQUENCE #** | **COA DESCRIPTION** | | | |
| 1 | Debt and Money Due | | | |
| **PARTY NAME** | | **PARTY TYPE** | | **PARTY #** |

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|

| 10/23/2023 | 1 | CLS: JUDGMENT/ DISPOSITION | Default Judgment Entered | 07/24/2024 |
|---|---|---|---|---|

| COA SEQUENCE # | COA DESCRIPTION | |
|---|---|---|
| 1 | Debt and Money Due | |
| **PARTY NAME** | **PARTY TYPE** | **PARTY #** |

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|
| 10/22/2025 | 1 | CLS: JUDGMENT/ DISPOSITION | Dismiss/Decided By Dispositive Motion/Dismiss by Judge/Party | 12/19/2025 |

| COA SEQUENCE # | COA DESCRIPTION | |
|---|---|---|
| 1 | Debt and Money Due | |
| **PARTY NAME** | **PARTY TYPE** | **PARTY #** |

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|
| 09/12/2024 | 1 | CLS: JUDGMENT/ DISPOSITION | Dismiss/Decided By Dispositive Motion/Dismiss by Judge/Party | 09/12/2024 |

| COA SEQUENCE # | COA DESCRIPTION | |
|---|---|---|
| 1 | Debt and Money Due | |
| **PARTY NAME** | **PARTY TYPE** | **PARTY #** |

| REGISTER OF ACTIONS ACTIVITY | | | | | |
|---|---|---|---|---|---|
| **EVENT DATE** | **EVENT DESCRIPTION** | **EVENT RESULT** | **PARTY TYPE** | **PARTY #** | **AMOUNT** |
| 03/25/2026 | REQUEST FOR HEARING/ SETTING | | D | 1 | |
| 03/25/2026 | MTN: TO JOIN | | D | 1 | |
| | Motion for Joinder of Dartmouth Collections LLC and Gabriel Vadasz as Involuntary Plaintiffs Pursuant to Rule 1-019(A) NMRA | | | | |
| 03/21/2026 | RPN: BANKRUPTCY STAY LIFTED | | P | 1 | |
| | Notice of Bankruptcy Order Lifting Automatic Stay | | | | |
| 01/12/2026 | AUDIO LOG NOTES | | D | 1 | |
| | Courtroom 520: 10:02:30 - 10:07:12 | | | | |
| 12/24/2025 | REQUEST FOR HEARING/ SETTING | | D | 1 | |
| 12/18/2025 | CLS: NOTICE OF BANKRUPTCY | | P | 1 | |
| | Notice of Bankruptcy | | | | |
| 12/09/2025 | NTC: OF FILING | | P | 1 | |
| | Notice of Filing Supplemental Authority | | | | |
| 12/05/2025 | NTC: HEARING (MOTION) | | | | |
| | January 12, 2026 | | | | |
| 11/25/2025 | REPLY | | P | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | In Support of Motion to Enforce | | | | |
| 11/18/2025 | ANSWER BY GARNISHEE | | G | 1 | |
| 11/12/2025 | RESPONSE | | D | 1 | |
| | in Opposition to Motion filed on October 27, 2025 | | | | |
| 11/12/2025 | NTC: COMPLETION OF BRIEFING | | D | 1 | |
| | Re Motion to Vacate | | | | |
| 11/12/2025 | REPLY | | D | 1 | |
| | in Support of Defendant Jian Pengs Motion to Vacate Judgment and Vacate Purported Arbitration Award | | | | |
| 11/06/2025 | RESPONSE | | P | 1 | |
| | to Defendant's Motion to Vacate Judgmnet and Vacate Arbitration Award | | | | |
| 10/30/2025 | ACCEPTANCE OF SERVICE | | P | 1 | |
| 10/29/2025 | WRIT OF GARNISHMENT | | | | |
| | Garnishee Law Office of Stephen B. Waller LLC as to Jian Peng | | | | |
| 10/28/2025 | | | | | |
| 10/28/2025 | APPLICATION WRIT GARNISHMENT | | P | 1 | |
| 10/27/2025 | MTN: MOTION | | P | 1 | |
| | to Enforce Judgment and for Turnover of Accounts Receivable | | | | |
| 10/27/2025 | REQUEST FOR HEARING/ SETTING | | D | 1 | |
| | Amended Request for Hearing | | | | |
| 10/25/2025 | ENTRY OF APPEARANCE | | P | 1 | |
| 10/22/2025 | RPN: REOPEN FEE/PAID $132 (Arbitration) | | D | 1 | |
| | Motion to Vacate Judgment and Vacate Purported Arbitration Award | | | | |
| 10/22/2025 | REQUEST FOR HEARING/ SETTING | | D | 1 | |
| 10/22/2025 | ENTRY OF APPEARANCE | | D | 1 | |
| 09/12/2024 | CLS: JUDGMENT ON WRIT | | | | |
| | JUDGMENT ON WRIT OF GARNISHMENT, CLAIM OF EXEMPTION AND ORDER TO PAY | | | | |
| 09/12/2024 | RPN: REOPEN NO FEE REQUIRED | | | | |
| | In House Reopen | | | | |
| 09/10/2024 | AUDIO LOG NOTES | | P | 1 | |
| | Hearing Room 510 11:01:13am - 11:05:12am | | | | |
| 08/22/2024 | CERTIFICATE OF SERVICE | | P | 1 | |
| 08/21/2024 | NTC: HEARING | | | | |
| | September 9, 2024 | | | | |
| 07/26/2024 | TRANSCRIPT OF JUDGMENT | | | | |
| 07/25/2024 | CERTIFICATE OF SERVICE | | P | 1 | |
| 07/24/2024 | CLS: JUDGMENT ARBITRATION AWARD | | | | |
| | ORDER CONFIRMING ARBITRATION AWARD AND JUDGMENT | | | | |
| 07/22/2024 | CERTIFICATE OF SERVICE | | P | 1 | |

| Date | Description | | P | 1 | |
|---|---|---|---|---|---|
| 06/21/2024 | AFFIDAVIT | | P | 1 | |
| | Sworn Declaration of Gabriel Vadasz | | | | |
| 06/21/2024 | MTN: MOTION | | P | 1 | |
| | Motion for Order Confirmating Arbitration Award and for Final Judgment | | | | |
| 06/18/2024 | AUDIO LOG NOTES | | | | |
| | Hearing Room 515: 2:08:00-2:20:54 | | | | |
| 06/16/2024 | AFFIDAVIT | | P | 1 | |
| | In Support of Fees Costs and Interest | | | | |
| 06/16/2024 | STATEMENT | | P | 1 | |
| | Of Taxable Costs | | | | |
| 06/16/2024 | EXHIBIT LIST | | P | 1 | |
| 05/23/2024 | NTC: HEARING (MOTION) | | | | |
| | June 18, 2024 | | | | |
| 05/06/2024 | CERTIFICATE AS TO THE STATE OF THE RECORD | | | | |
| 05/06/2024 | CERTIFICATE AS TO THE STATE OF THE RECORD | | | | |
| | NOT ISSUED | | | | |
| 04/24/2024 | REQUEST FOR HEARING/ SETTING | | P | 1 | |
| | Motion for Default Judgment | | | | |
| 04/24/2024 | AFFIDAVIT OF NON-MILITARY | | P | 1 | |
| | Affirmation of Plaintiff in Support of Application for Default Judgment | | | | |
| 04/24/2024 | MTN: MOTION/APPLICATION FOR DEFAULT JUDGMENT | | P | 1 | |
| | Motion for Default Judgment | | | | |
| 03/13/2024 | AFFIDAVIT OF PUBLICATION | | P | 1 | |
| 02/12/2024 | ORD: FOR PUBLICATION | | | | |
| 01/29/2024 | MTN: FOR PUBLICATION | | P | 1 | |
| | Motion for Service by Publication | | | | |
| 01/25/2024 | AFFIDAVIT OF SERVICE | | P | 1 | |
| | Affidavit of Attempted Service by Private Process Server | | | | |
| 12/12/2023 | | | | | |
| 10/23/2023 | OPN: PETITION | | P | 1 | |

| JUDGE ASSIGNMENT HISTORY | | | |
|---|---|---|---|
| ASSIGNMENT DATE | JUDGE NAME | SEQUENCE # | ASSIGNMENT EVENT DESCRIPTION |
| 10/23/2023 | Barela-Shepherd, Denise | 1 | INITIAL ASSIGNMENT |

Return
Print

©2007 New Mexico Courts

# Exhibit G

ADMINISTRATIVE
PROCEEDING File No. 3-20537

| | |
|---|---|
| In the Matter of | : |
| | : |
| GTV Media Group, Inc., Saraca | : |
| Media Group, Inc., and Voice of | : |
| Guo Media, Inc., | : |
| | : |
| Respondents. | : |
| | : |

## NOTICE FOR DISTRIBUTION OF THE GTV MEDIA GROUP FAIR FUND

*This Plan Notice is issued pursuant to the Commission-approved Plan of Distribution ("Distribution Plan"). This is not a solicitation from a lawyer.*

**If you purchased the stock or digital asset securities of the companies listed below (the "Securities") during the corresponding "Relevant Period(s)" and suffered a loss as a result of the conduct described in the Order Instituting Cease-and-Desist Proceedings in the above-captioned matter, you may be eligible for compensation from the GTV Media Group Fair Fund.**

### G Entities Securities and Corresponding Relevant Period(s) (Inclusive)

| Security | Relevant Period Start Date | Relevant Period End Date |
|---|---|---|
| GTV Common Stock | 4/20/2020 | 6/2/2020 |
| Digital Assets: G-Coins or G-Dollars | 4/1/2020 | 6/30/2020 |

In order to be considered for eligibility for a distribution from the GTV Media Group Fair Fund, you must submit a completed and signed Proof of Claim Form ("Claim Form") to the Fund Administrator[1], with adequate documentation of your transactions: **online no later than 11:59 p.m. PST on June 6, 2022 (the "Claims Bar Date"); by First Class Mail, postmarked by June 6, 2022; or if not by First Class Mail, received by the Fund Administrator by June 6, 2022**. The Claims Bar Date is June 6, 2022, identified in the Distribution Plan. Further directions for submitting a claim, including the online claims process and physical address are set forth below and on the Claim Form.

---

[1] Any capitalized terms used in this Plan Notice that are not otherwise defined herein shall have the meaning ascribed to them in the Distribution Plan, which is available on the website established for the GTV Media Group Fair Fund at www.GTVMediaGroupFairFund.com.

Questions? Visit www.GTVMediaGroupFairFund.com,
Call toll-free 866-853-5013 or email info@GTVMediaGroupFairFund.com

The information contained in this Plan Notice is only a summary. More detailed information and important documents can be found on the website dedicated to this matter at www.GTVMediaGroupFairFund.com (the "Distribution Website").

**Please Note: Receipt of this Plan Notice does not mean you are eligible to receive a Distribution Payment; eligibility will be determined in accordance with the Commission-approved Distribution Plan (the "Plan") upon receipt of your Claim Form and necessary documentation.**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY BECAUSE YOU MAY BE ELIGIBLE FOR COMPENSATION FROM THE GTV MEDIA GROUP FAIR FUND. THIS NOTICE CONTAINS IMPORTANT INFORMATION REGARDING YOUR POTENTIAL ELIGIBILITY TO SHARE IN THE GTV MEDIA GROUP FAIR FUND.

## Background

**The Administrative Proceeding**

On September 13, 2021, the U.S. Securities and Exchange Commission ("SEC") issued the Order instituting and simultaneously settling cease-and-desist proceedings against the Respondents GTV Media Group ("GTV"), Saraca Media Group ("Saraca"), and Voice of Guo Media, Inc. In the Order, the SEC found that from approximately April 2020 through June 2020, Respondents generally solicited thousands of individuals to invest in the GTV Stock offering. The SEC further found that during the same period, GTV and Saraca ("the G Entities") also solicited individuals to invest in the Digital Asset offering. As a result of these two unregistered securities offerings, whose proceeds were commingled, Respondents collectively raised approximately $487 million from more than 5,000 investors, including individuals in the United States.

Respondents disseminated information about the two offerings to the general public through publicly available videos on the G Entities' websites, as well as on social media platforms such as YouTube and Twitter. With respect to the GTV Stock offering, Respondents provided prospective investors with access to Google Drives that contained investment agreements and wire instructions for investors to send funds to purchase securities. The G Entities also solicited investments in the Digital Asset offering on the G Entities' public websites, social media platforms, and mobile applications.

The G Entities promoted the purchase of the Digital Assets as an investment with a likelihood of significant returns based on the G Entities' ability to develop an online platform through which investors would be able to transact using either G-Coins or G-Dollars. The G Entities had not developed or distributed the Digital Assets or a platform that would allow users to transact with or sell digital assets.

**The GTV Media Group Fair Fund, the Tax Administrator, and the Fund Administrator**

The SEC collectively ordered the Respondents to pay $486,745,063 in disgorgement, $17,688,365 in prejudgment interest, and $35,000,000 in civil money penalties, for a total of $539,433,428, to the SEC. The SEC also created the Fair Fund, pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, so the penalties paid, along with the disgorgement and interest paid, can be distributed to harmed investors.

To date, the Respondents have paid a total of $455,439,194.49. Any additional funds collected from the Respondents, pursuant to the Order will be added to the Fair Fund. The Fair Fund has been deposited at the United States Department of the Treasury's Bureau of the Fiscal Service ("BFS") for investment.

2

Questions? Visit www.GTVMediaGroupFairFund.com
Call toll-free 866-853-5013 or email info@GTVMediaGroupFairFund.com

Case 2:25-bk-11985-EPB    Doc 49    Filed 04/17/26    Entered 04/17/26 09:20:37    Desc
Main Document    Page 97 of 100

On October 14, 2021, the SEC appointed Miller Kaplan Arase LLP as the tax administrator (the "Tax Administrator") for the Fair Fund to handle the tax obligations of the Fair Fund.[2] The Tax Administrator will be compensated for reasonable fees and expenses from the Fair Fund in accordance with its 2019-2021 Engagement Letter Agreement with the SEC.

On November 23, 2021, the SEC appointed JND Legal Administration ("JND"), as the fund administrator for the Fair Fund (the "Fund Administrator"), and the Fund Administrator has obtained a bond in the amount of $455,439,194.49, as ordered.[3] Pursuant to Rule 1105(a) of the SEC's Rules, 17 C.F.R. § 201.1105(a), the Fund Administrator may be removed at any time by order of the SEC or hearing officer.

**The Plan**

The Plan provides for the distribution of the Fair Fund, comprised of disgorgement, prejudgment interest, and civil money penalties paid by GTV Media Group, Inc. ("GTV"), Saraca Media Group, Inc. ("Saraca" and together with GTV, the "G Entities"), and Voice of Guo Media, Inc. ("VOG") (collectively, the "Respondents") in the above-captioned matter.

On **April 7, 2022,** the SEC approved the Plan. The approved Distribution Plan is available on the Distribution Website at www.GTVMediaGroupFairFund.com as well as on the SEC public webpage for this matter, **https://www.sec.gov/divisions/enforce/claims/gtv-media-group.htm.**

<u>**Who May Be Eligible for a Distribution?**</u>

If you invested in one of the securities listed in the chart on page 1 of this notice, during the corresponding Relevant Period(s); are not an Excluded Party as defined in the Plan; and suffered a loss according to the Plan, you may be eligible for a distribution from the GTV Media Group Fair Fund.

To be considered for a Distribution Payment, you must timely submit a completed and signed Claim Form including adequate documentation for claimed transactions. If you believe you may be eligible for a distribution and are not an Excluded Party (see below), you should timely submit a completed and signed Claim Form.

"Excluded Parties" are defined in paragraph 17 of the Plan as follows and are not eligible to receive a distribution from the GTV Media Group Fair Fund:

        (a)     The Respondents;

        (b)     Present or former officers or directors of the Respondents or any assigns, creditors, heirs, distributees, spouses, parents, dependent children or controlled entities of any of the foregoing persons or entities;

        (c)     Any employee or former employee of the Respondents or any of its affiliates

---

[2] *See* Order Appointing Tax Administrator, Exchange Rel. No. 93313 (Oct. 14, 2021).
[3] *See* Order Appointing Fund Administrator and Setting Administrator's Bond Amount, Exchange Act Rel. No. 93666 (Nov. 23, 2021)

who has been terminated for cause or has otherwise resigned, in connection with the conduct described in the Order;

(d)    Any Person who, as of the Claims Bar Date, has been the subject of criminal charges related to the conduct described in the Order or any related Commission action;

(e)    Any firm, trust, corporation, officer, or other entity in which Respondents have or had a controlling interest;

(f)    The Fund Administrator, its employees, and those persons assisting the Fund Administrator in its role as the Fund Administrator; or

(g)    Any purchaser or assignee of another Person's right to obtain a recovery from the Fair Fund for value; provided, however, that this provision shall not be construed to exclude those Persons who obtained such a right by gift, inheritance or devise.

### Allocation of the GTV Media Group Fair Fund

A Plan of Allocation has been prepared that provides the formula by which Distribution Payments will be determined (*See* Exhibit A of the Plan). The Net Available Fair Fund will be distributed to Eligible Claimants in accordance with that Plan of Allocation.

All Distribution Payments will be subject to a "Minimum Distribution Amount" - if a Potential Claimant's Distribution Payment is less than $10.00, that Potential Claimant will not receive a Distribution Payment and the funds will be distributed to Eligible Claimants whose Distribution Payments are equal to or greater than $10.00. *See* Exhibit A of the Plan.

### Claim Form

Your Claim Form may be submitted online, by First Class Mail, or other delivery. A paper Claim Form has been included with this Plan Notice. If you require additional copies of the Claim Form, you may obtain them from the Distribution Website.

Your completed and signed Claim Form, including adequate supporting documentation, must be submitted online no later than 11:59 p.m. PST on the Claims Bar Date. following the directions at www.GTVMediaGroupFairFund.com. Alternatively, you may submit your completed and signed Claim Form by **First Class Mail, postmarked by the Claims Bar Date or, <u>if not sent by First Class Mail, received by the Fund Administrator by the Claims Bar Date</u>**. Mailed and/or otherwise physically delivered Claim Forms should be directed to the following address:

GTV Media Group Fair Fund
c/o JND Legal Administration
PO Box 91403
Seattle, WA 98111

If you fail to timely submit a completed and signed Claim Form by the deadline, you may be barred from receiving a payment from the GTV Media Group Fair Fund. The Claim Form must be accompanied by adequate supporting documentation for each transaction listed in the Claim. You will be responsible for demonstrating timely submission of your Claim Form.

4
Questions? Visit www.GTVMediaGroupFairFund.com
Call toll-free 866-853-5013 or email info@GTVMediaGroupFairFund.com
Case 2:25-bk-11985-EPB    Doc 49    Filed 04/17/26    Entered 04/17/26 09:20:37    Desc
Main Document    Page 99 of 100

If you submit a Claim Form that fails to provide all required information, or is otherwise deficient, you may receive a Claim Status Notice advising you of the reason(s) why the claim is deficient and providing to you an opportunity to cure such deficiencies.

## Additional Information

Additional information regarding the GTV Media Group Fair Fund, including the Distribution Plan, the Plan Notice, the Claim Form, relevant deadlines, and related materials are available on the Distribution Website at www.GTVMediaGroupFairFund.com. You may obtain additional information or request copies of the Claim Form by contacting the Fund Administrator toll-free at 866-853-5013, emailing info@GTVMediaGroupFairFund.com, or writing to:

GTV Media Group Fair Fund
c/o JND Legal Administration
PO Box 91403
Seattle, WA 98111

PLEASE CHECK THE WEBSITE WWW.GTVMEDIAGROUPFAIRFUND.COM FOR UPDATES

Case 2:25-bk-11985-EPB    Doc 49    Filed 04/17/26    Entered 04/17/26 09:20:37    Desc
Main Document        Page 100 of 100